NEW-YORK PRACTICE REPORTS. 237

Buffalo Plank Road Co. agt. Commissioners of Highways, &c.

## SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF THE BUFFALO AND BATAVIA PLANK ROAD COMPANY agt. THE COMMISSIONERS OF HIGHWAYS OF THE TOWN OF LANCASTER.

By the act to amend the act to provide for the incorporation of companies to construct *plank roads*, &c., passed July 21, 1853, it is provided, that every person liable to do highway labor, living or owning property on the line of any plank road of this state, *may*, on making application in writing to the commissioners of their respective towns, on, or any day previous to the time of making the highway warrants by such commissioners, be assessed the apportionment of highway labor for such property upon such plank road; and the commissioner or commissioners *may* assess such person for the land or property owned by him, in or upon the line of such plank road, and apportion the amount of highway labor upon such plank road, as a separate road district.

The question is, where such an application is made to the commissioners, whether the act is *imperative* upon them to grant it; or whether they have a *discretion* to apportion the labor to the plank road or not. In other words, whether, in the act, "*may*" must be construed "*must*."

*Held*, that, by the true construction of the act, taking into consideration the probable intention of the legislature, in reference to the whole subject, the power conferred upon the commissioners is *discretionary;* and they cannot be *compelled* to exercise it.

The subject in reference to the construction of statutes, where "*may*" is to be construed "*must*," or "*shall*," examined.

*Erie Special Term, May,* 1854.

AT a late special term, upon the petition and other papers of the Buffalo and Batavia Plank Road Company, an order was made, requiring the commissioners of highways of Lancaster to show cause, at this special term, why a mandamus should not issue against them, to compel them to assess certain persons for land and property owned by them upon the line of the plank road, and to apportion such highway labor upon the Buffalo and Batavia Plank Road, as a separate road district; such persons having made application to the commissioners for that purpose, pursuant to the provisions of an act to amend an

act to provide for the incorporation of companies to construct plank roads, &c., &c., passed July 21, 1853.

The plank road company now moved for a mandamus, and the commissioners showed cause against the motion.

GEORGE L. MARVIN and JOHN GANSON, *for petitioners*.

JOHN TALCOTT, *for commissioners of highways*.

MARVIN, Justice.   By the act to amend the act to provide for the incorporation of companies to construct plank roads, &c., passed July 21, 1853, it is provided that every person liable to do highway labor, living or owning property on the line of any plank road of the state, *may*, on making application in writing to the commissioners of their respective towns, on, or any day previous to the time of making the highway warrants by such commissioners, be assessed the apportionment of highway labor for such property upon such plank road ; and the commissioner or commissioners *may* assess such person for the road or property owned by him in or upon the line of such plank road, and apportion the amount of highway labor upon such plank road, as a separate road district.   By the second section of the act, it is made the duty of the commissioners to make a separate list of such persons, and land or property so assessed, and deliver it to one of the directors of the plank road, who shall have the labor worked on the plank road, &c. The person assessed may commute, &c.

The plank road company insists that, when the persons, described in the act, make application to the commissioners, the commissioners are bound to assess such persons, and apportion the amount of their labors, for the property mentioned upon the plank road.   In other words, that the act is *imperative* upon the commissioners, and that they have no discretion, after the application in writing has been made by the person liable to do highway labor, and living or owning property upon the line of the plank road.   The commissioners maintain the converse of this position, and claim that they have a discretion whether they will apportion the labor to the plank road or not.

In *Newburgh Turnpike Co.* agt. *Miller*, (5 *John. Ch. R.* 113,) Chancellor KENT says, that in respect to statutes, the rule of construction seems to be, that the word *may* means *must*, or *shall*, only in cases where the public interest and rights are concerned, and when the public or third persons have a claim, *de jure*, that the power should be exercised. He deduced this general rule from an examination of the English cases. The same general rule is reiterated in *Malcom* agt. *Rogers*, (5 *Cow. R.* 188,) and cases are cited in illustration of the rule. (*See, also, Mayor of New-York* agt. *Furge*, 3 *Hill* 614; *and Minor* agt. *The Mechanics' Bank of Alexandria*, 1 *Pet. R.* 63.) In the last case, it was provided, in the charter of the bank, "that the capital stock of said corporation *may* consist of $500,000." It was argued that *may* meant must. The court say "such a construction is proper, in all cases where the legislature mean to impose a positive and absolute duty, and not merely to give a discretionary power; that no general rule can be laid down upon this subject, further than that that exposition ought to be adopted in this, as in other cases, which carries into effect the true intent and object of the legislature in the enactment. The ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provision." And the court in that case gave to the word *may* its ordinary meaning. (*See, also, New-York and Erie Railroad* agt. *Coburn*, 6 *How. Pr. R.* 223.) The principles deducible from the cases, are, as I understand, that *may*, when used in a statute to confer power upon public bodies or officers to do a thing, and the public have an interest that the things be done; or an individual has a claim *de jure* that the power should be exercised; imposes a duty upon the public body or officer, and is to be construed as *imperative*. If the rights and interests of the public are not concerned, or private persons have no lawful claim and interest in the exercise of the power, the word *may*, by which the power is conferred, should receive its ordinary meaning, and it should be construed as conferring a discretionary power upon the officer or public body. Public bodies and officers are often empowered to do

things and perform acts by direct and proper terms. Thus, they are authorized and empowered, or it is declared that it shall be *lawful*, to do certain things, without, in terms, making it their duty. (*Mayor of New-York* agt. *Furge, supra, belongs to this class. So in Rex* agt. *Barlow*, 2 *Salk.* 609 ; and 5 *J. Ch. R.*, 112.) The rule of construction is the same in these cases, as in those where the power is conferred by the word *may;* and the principles by which to ascertain whether a *duty* to execute the power is raised, are the same. If the rights and interests of the public, or the claim of an individual, are such as to impose a duty upon the officer, or public body, to act ; then the statute, giving the power, is construed as *imperative ;* otherwise, as *discretionary.* An English statute declared that the sheriff *may* take bail, and it was held that he *must* take bail. This may be taken as a case illustrating the rule of construction when a private person has a claim, *de jure*, that the power be exercised. The individual arrested had a right, by the law of the land, to give bail and be discharged, and the sheriff was entrusted with the power to take bail, and it was held to be his *duty* to exercise the power, and therefore the language of the act was construed as imperative.

With these principles in view, let us inquire whether the statute has imposed upon the commissioners of highways *the duty* to apportion the highway labor in question upon the plank road, as a separate road district. In construing statutes, it is a leading rule to endeavor to ascertain the intention of the legislature ; and, with this object in view, it is often important to examine not only the particular statute upon which the question arises, but other statutes touching the subject matter, and especially those supposed to be affected by the new enactment. We should, in considering the act of 1853, keep in mind the highway laws, and the powers and duties of highway commissioners.

As we have seen, by the act of 1853, (*Sess. Laws of* 1853, 1206,) the person liable to do highway labor, living or owning property on the line of a plank road, *may*, on making application to the commissioners, be assessed to work upon the plank road ;

and then the commissioners *may* assess such person for certain property, and apportion the amount of highway labor upon the plank road.

If the language here used is to receive its ordinary and usual meaning, it is not imperative. First, the tax-payer is to decide whether he is willing to work his highway labor upon the plank road. Until he makes application in writing, the commissioners have no power to act in the matter. All agree that it is not imperative upon the person, liable to do highway labor, to make any application to the commissioners. After this application is made, the commissioners have jurisdiction, and may act. They are public officers, having, by law, important powers, and upon whom are imposed important duties. But, at this point, let us ascertain whether the public interests and rights are answered, and whether the public, or third persons, have a claim, *de jure,* that the commissioners should exercise the power, and apportion the labor to the plank road. I cannot see that the public have any interest, right, or claim, that is to be advanced in the apportionment of the labor to the plank road. On the contrary, I can see that the rights of the public may be injuriously affected, by withdrawing from the *public highways* the labor which otherwise would be expended upon them. They are free ways, used by the public and all persons, and in their maintenance the public have a deep interest. They belong to the public, and the commissioners are charged with the duty of maintaining them.

Has the private person, "liable to do highway labor," and who makes the application to the commissioners, any *claim, de jure,* to perform his highway labor upon the plank road? He has not, unless this statute gives him the right. In my opinion, the legislature did not intend to confer upon him the absolute right to perform his highway labor upon the plank road, and thus deprive the commissioners of all discretion in the matter. I do not see that he has any particular interest in working upon the plank road—a road belonging to a private corporation, upon which the traveller pays toll. I am not able to see how the private interests of the tax payer is to be advanced

by permitting him to work upon the property of the private corporation. It does not appear that he is to derive any benefit not common to the whole public. I cannot see that he, as a private person, has any claim, *de jure*, or legal right, that is to be injuriously affected by not permitting him to work out his highway tax upon the plank road.

The plank road company is a private corporation, owning the road, and having a right to charge and collect tolls from those who use it. Has this corporation a claim, *de jure*, to the highway labor in question? The corporation must show this right before it can have a mandamus. Does the law give to these corporations the right to this labor, when the person liable to do highway labor, &c., shall make the application to the commissioners? In my opinion, the law does not confer upon them any such claim or right. They are not, by the application of the tax payer, vested with a legal right to the tax; and, unless they are, they cannot compel the commissioners to "apportion" the highway labor to them.

After a careful consideration of the statute, I am not able to perceive that the public have interests or rights; or that the tax payer, or the corporation, has any lawful claim, which make it imperative upon the commissioners of highways to assess the applicant for the land or property owned by him, in or upon the line of the plank road, and apportion the amount of highway labor upon the plank road as a separate road district. The commissioners have the power to do so; but this power is discretionary, and they cannot be compelled to exercise it. There is nothing imperative in the first section of the act. The person liable to do highway labor may, on making application, be assessed; and the commissioners *may* assess and apportion, &c. The proper construction of the section, I think, is, that the tax payer may, if he desires it, be assessed to work upon the plank road, in case the commissioners of highways consent to such work being so apportioned. The commissioners have no power thus to apportion the labor, until the tax payer, by his application, consents. They have then a discretionary power, which they may exercise or not. The second

section makes it their duty to make a separate list of such persons, and such land or property so assessed, and deliver it to one of the directors of the plank road. This *duty* is not imposed, unless, in the exercise of the power conferred in the first section, they shall have assessed such person, &c., and apportioned the highway labor upon the plank road. It seems to me, that it would be unwise legislation to deprive the commissioners of highways of all control over the highway labor of those persons living or owning property on the lines of plank roads owned by private corporations. The labor necessary for the maintenance of public highways in the neighborhood might be withdrawn to the great prejudice of the public, and the public highways might become impaired. On the other hand, it may be very proper, that a portion of the highway labor of those living or owning property upon plank roads, should be applied upon the plank road; and there may be cases when all this labor may very properly be expended upon the plank road, without injury to the public, or public highways in the town. The power to apportion the labor, after the tax payer has made his application, is therefore very properly confided to the highway commissioners, who have charge of all the highways in their town. They should exercise this power discreetly. But, as the power is discretionary, the courts cannot control it.

In the present case, it appears that the commissioners have assessed more than half of the persons making application, and have apportioned their labor to be done upon the plank road, and have made out the list pursuant to the statute. The commissioners have regarded the power as discretionary, and in this I think they have given to the statute its true construction. This view is strengthened by referring to our highway system, by which the care and superintendence of highways and bridges are given to the commissioners of highways. (1 *R. S.* 501, § 1.) It is made their duty to keep them in repair; to divide the town into road districts—annually, if they think it necessary; and to assign to each of the districts such of the inhabitants liable to work on highways as they shall think proper—having regard to the proximity of residence, as much as may be.

It here appears that the commissioners have power over all the highway labor of the town, and may assign it in such portions as they please to the different road districts. They are, however, admonished to regard the proximity of residence of those who are to perform the labor as much as may be. The power to make the districts, and assign the inhabitants to the districts, must be exercised by them; but, in exercising this power, they act upon their own judgment and discretion. In my opinion, the legislature did not intend, by the act of 1853, to withdraw this discretionary power of the commissioners over the highway labor of their town, and compel them, in any contingency, to apportion portions of the labor to plank roads passing through the town.

The motion for mandamus must be denied, with $10 costs.