HIRAM GILMORE, Respondent, *v.* THE CITY OF UTICA, Appellant.

The provision of the charter of the city of Utica (§ 79, chap. 18, Laws of 1862, as amended by chap. 28, Laws of 1870), which authorizes the common council of said city "to require all railroad companies, operating street railroads in any of the streets of the city, to repave between their tracks, and at least two feet in width on each side thereof, whenever the common council shall deem such repavement necessary" is not mandatory, but the exercise of the authority is discretionary.

The private owners of property fronting upon a street in said city have no vested right, or claim *de jure*, that a railroad company lawfully operating its road in the street shall repave or bear the expense of repaving any portion of it.

Accordingly *held*, that said provision of the charter was not violated by the assessment upon the property benefited of two-thirds of the whole expense of repaving a street on which a street railroad was operated, without requiring the railroad company to pay or bear any portion of the expense.

Also *held*, that the duty to require the railroad company to repave or bear the expense of repaving a portion of the street was not imposed upon the common council by the provision of said charter (§ 99, subd. 4) requiring the street commissioners in case the owner or occupant of property bounded on a street fails to keep the sidewalk in proper repair, to repair it and making the expense a lien upon the property, to be assessed and collected as are other assessments for local improvements "except that the expense of repaving between and on the outer sides of street railroad tracks may be collected from said railroad company."

While under the provision of the Railroad Act of 1850 (subd. 5, § 28, chap. 140, Laws of 1850), providing that when a railroad company constructs its road upon any street or highway it shall restore the same "to its former state or to such state as not to impair its usefulness," the company is bound not only to repave a street so used by it, but to keep that portion used by it in a reasonable state of repair; it is not

bound, whenever the municipality shall resolve to pave or repave the street, to conform its repairs to the absolute directions and requirements of the municipality. If the company restores the street to its former usefulness and maintains it in that condition, it has discharged its whole duty under that provision.

Where, therefore, defendant repaved one of its streets, upon which was a street railroad, with asphalt pavement, *held*, that the railroad company was not required by that provision to so repave the portion occupied by its tracks.

Also *held*, that if the company was under some obligation to improve the pavement between and about its tracks, and, therefore, ought to have borne some portion of the expense, the failure of the city to enforce that liability did not render an assessment therefor illegal.

The railroad was constructed by a company organized under said General Railroad Act. It leased the same as authorized by the act of 1885 (Chap. 305, Laws of 1885), to another company organized under the Street Railroad Act of 1884 (Chap. 252, Laws of 1884), and the lessee was operating the road. *Held*, that said lessee was not bound by the provision of the latter act (§ 9) requiring every corporation incorporated or operating a railroad constructed under the provisions of the act within an incorporated city or village, whenever and as required by the municipal authorities to keep in permanent repair the portion of every street between its tracks, the rails of its tracks, and two feet each side, and in case of its neglect so to do, authorizing the municipality to make the repairs at the expense of the company; that the lessee was operating the road in the right of the lessor, and hence that provision had no pertinency.

The lessor was permitted by the common council to lay its tracks in the street upon condition that it should "replace and keep in good repair the pavement between and at least two feet in width on each outer side of the tracks * * * subject and according to the directions of the city surveyor." *Held*, that as this was a contract, not a statutory obligation on the part of the company, and in case of its refusal or neglect to perform it, the only remedy of the city was by action; that the contract was with the city, not the abutting owners, and it could enforce or omit to enforce it, and could entirely release or discharge it; and that the city was not prevented thereby from paving the whole street and laying the assessment for the two-thirds of the expense thereof, upon the property fronting on the streets, as provided by the charter. (Chap. 426, Laws of 1887.)

*Gilmore* v. *City of Utica* (55 Hun, 514), reversed.

(Argued June 9, 1890; decided June 17, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 17, 1890, which affirmed a judgment in

favor of plaintiff entered upon a decision of the court on trial at Special Term.

The Utica City Railroad Company was organized under the General Railroad Act in 1862, and it applied to the common council of the city for permission to lay its tracks in the streets, and permission was given. "Upon condition, nevertheless, that the said railroad company shall and doth construct the said railroad upon the most approved plan and in a secure and substantial manner, and *replace* and keep in good repair the pavement between and at least two feet in width on each outer side of the tracks, the whole to be done subject and according to the directions of the city surveyor."

The railroad was built through Genesee street, and has been maintained there ever since. The Utica Belt Line Street Railroad Company, on the 1st day of December, 1886, became the lessee of the road for ninety-nine years, and has since been in possession of and operated the same. On the 28th day of May, 1888, the city duly made a contract with the Warren-Scharf Asphalt Paving Company for paving Genesee street, and that company fully performed its contract and paved the street, and the expense thereof was upwards of $100,000. After deducting one-third of the entire expense the remainder was assessed upon the property fronting on the street. The plaintiff's property was thus assessed, and he complains that the assessment is illegal, because the railway company should have paid or borne the expense of paving between its tracks, and for two feet on each side thereof, and the expense of that portion of the pavement should not have been included in the assessment; and he brought this action to restrain the enforcement of the assessment and to have it declared illegal and void.

Further facts are stated in the opinion.

*A. M. Beardsley* for appellants. The general powers of the common council are derived from the charter (Chap. 18, Laws of 1862) and amendatory laws, but the council has the additional power of doing such things as are necessary to carry out the powers expressly conferred. (1 Dillon on Mun. Corp.

[3d ed.] § 89; *Schanck* v. *Mayor, etc.,* 69 N. Y. 444; *N. Y. & H. R. R. Co.* v. *Mayor, etc.,* 1 Hilt. 562, 588.) The assessment in this case was and is valid — was the only one the council could make, and the decisions of the courts below are erroneous. (Laws of 1862, chap. 18, § 99; Laws of 1877, chap. 426, §§ 2, 99; *O'Reilly* v. *City of Kingston,* 114 N. Y. 439; *Lyddy* v. *Long Island City,* 104 id. 218, 221; *People* v. *Jaehne,* 103 id. 182, 195; *Hunt* v. *City of Utica,* 18 id. 442; *Sage* v. *City of Brooklyn,* 89 id. 189, 207; *People* v. *Lacombe,* 99 id. 43–49; *Wuesthoff* v. *G. L. Ins. Co.,* 104 id. 580–589; *Maillard* v. *Lawrence,* 16 How. [U. S.] 251; *Malcome* v. *Rogers,* 5 Cow. 188, 193; *Minor* v. *M. Bank,* 1 Pet. 46; *Thompson* v. *Carrol,* 22 How. [U. S.] 422, 434.) The conclusion reached by the General Term that the Utica Belt Line Street Railroad Company was liable by contract to pay any part of the expense of this pavement, is erroneous and is not sustained by the law. (*Mayor, etc.,* v. *S. A. R. R. Co.,* 34 Barb. 41; 32 N. Y. 261; *Mayor* v. *T. A. R. R. Co.,* 33 id. 42; *Dartmouth College* v. *Woodward,* 4 Wheat. 518; Broom's Leg. Max. 254, 256; *In re Fulton Street,* 29 How. Pr. 429; *Breen* v. *City of Troy,* 60 Barb. 417; *In re Smith,* 99 N. Y. 424; Laws of 1862, chap. 18, §§ 110, 111.)

*W. A. Matteson* and *P. C. DeAngelis* for respondent. Under the General Railroad Act of 1850, the Utica Belt Line Street Railroad Company, as lessee of the Utica, Clinton and Binghamton Railroad Company, was legally bound to make said repavement in that portion of the street occupied by it. (Laws of 1850, § 28; *Cott* v. *L. R. Co.,* 36 N. Y. 214; *People* v. *T. & B. R. Co.,* 37 How. Pr. 427, 429; *People* v. *N. Y. C. & H. R. R. R. Co.,* 74 N. Y. 302, 307; *Gale* v. *N. Y. C. & H. R. R. R. Co.,* 76 id. 594; *Masterson* v. *N. Y. C. & H. R. R. R. Co.,* 84 id. 247; *People* v. *N. Y. C. & H. R. R. R. Co.,* 89 id. 266; *Moshier* v. *U. & S. R. Co.,* 8 Barb. 427; *Cuddeback* v. *Jewett,* 20 Hun, 187, 188; *Warner* v. *D., L. & W. R. R. Co.,* 80 N. Y. 212, 216; *Bell* v. *N. Y. C. & H. R. R. R. Co.,* 29 Hun, 560; Wood on Railway Law, 979;

*In re Appleby*, 26 Hun, 427.) The proposition that by the use of the word "replace" in the resolution authorizing the construction of the road, a brief and transitory duty only was imposed, a duty so meagre as only to require the railroad company to put back in its former place that particular pavement which it chanced to take up, if it took up any, in the original construction of its road, is erroneous. (*Beach* v. *Crain*, 2 N. Y. 86; 36 id. 529; 75 id. 10; 84 id. 255; 89 id. 269; 47 Hun, 430; 109 N. Y. 490; Endlich on Inter. of Stat. § 424; *People* v. *City of Brooklyn*, 21 Barb. 484; 53 N. Y. 617; 76 id. 174; 81 id. 139; 112 Penn. St. 96; Laws of 1862, chap. 18, §§ 47, 79, 99; Laws of 1868, chap. 737; *In re Phillips*, 60 N. Y. 22; *In re Grube*, 81 id. 141.) An ambiguity in a grant of privileges must operate against the grantee and in favor of the public. (*Mayor, etc.,* v. *B., etc., R. R. Co.,* 97 N. Y. 275, 281, 282; *People* v. *Newton*, 112 id. 396.) In agreeing to keep the pavement "in good repair," the railroad company obligated itself and its successors to put down a new pavement when necessary. (*Beach* v. *Crain*, 2 N. Y. 86; *Myers* v. *Burns*, 35 id. 269, 270.) As the result of the amendment to the city charter of 1870 (Chap. 28, Laws of 1870, amending § 79 by adding subd. 5, and amending subd. 4 of § 99), the Utica, Clinton and Binghamton Railroad Company was charged with the imperative duty to repave between the tracks of its street railroad in Genesee street, and a space two feet outside the outer rails, whenever such repavement should be deemed necessary by the common council, so long as it operated its road. (*People* v. *Suprs., etc.,* 11 Abb. Pr. 1141; 5 Johns. Ch. 101, 113; *Mayor, etc.,* v. *Furze*, 3 Hill, 612; 1 Pet. 46; 9 How. [U. S.] 248, 259; 4 Wall. 435, 447; 51 N. Y. 401; 72 id. 583; 68 id. 114; *Mayor, etc.,* v. *T. T. S. R. R. Co.,* 113 id. 311, 317; *People* v. *O'Brien*, 111 id. 1; *People* v. *B. & A. R. R. Co.,* 70 id. 569; *A. N. R. Co.* v. *Brown*, 24 id. 345; *Griffin* v. *Mayor*, 4 id. 419, 432, 433; *Genet* v. *City of Brooklyn*, 99 id. 296, 307; *Lang* v. *Kiendl*, 27 Hun, 66; *Bailey* v. *Maguire*, 22 Wall. 215; *Hoge* v. *R. R. Co.*, 9 Otto, 348; 46 N. Y. 506; 91 id. 574; 4 Pet. 561; 18 Wall.

206; 116 U. S. 665; 132 id. 174, 189.) If such exemption from liability for this burden existed in favor of the Utica, Clinton and Binghamton Railroad Company, it was personal, so to speak, to it; it was an "immunity," and was not demisable or transferable. (Taylor on Land. & Ten. [2d ed.] 30, § 203; *Morgan* v. *Louisiana*, 93 U. S. 317; 103 id. 417; 122 id. 273; *C. & O. R. R. Co.* v. *Miller*, 114 id. 176.) There is no doubt that in 1870 the term "repaving" clearly contemplated a different kind of pavement from the old, if that was deemed wise by the proper authorities. (*In re Phillips*, 60 N. Y. 16; *In re Grube*, 81 id. 139, 141.) This action is properly brought and can be maintained. (Charter of the city of Utica, §§ 49, 62, 64, 109; *Rumsey* v. *City of Buffalo*, 97 N. Y. 114; 87 id. 452; 100 id. 378; 43 Hun, 102; 27 N. Y. S. R. 72; 28 id. 242; 63 N. Y. 489; 7 Hun, 652; 98 N. Y. 222.) The fact that the plaintiff did not appeal from the assessment to the common council, does not affect his right to relief in this forum. (103 N. Y. 536.)

EARL, J. It was found by the trial judge that at the time the city entered into the contract with the Warren-Scharf Ashphalt Paving Company, the pavement in Genesee street "was worn out, in very bad and dangerous condition, and was all cut up and rough, and a new pavement was necessary." Under such circumstances it was the duty of the city to cause the street to be repaved. Under its charter the general duty is imposed upon it to repair, pay and repave its streets; and ample provisions are contained in its charter to enable it to discharge this duty. (Chap. 18, Laws of 1862, as amended by chap. 28, Laws of 1870, chap. 426, Laws of 1887, and by other acts.) In the act of 1862, section 99, the entire expense of paving and repaving streets was required to be assessed upon the lots fronting upon the streets in proportion to their number of feet frontage. By the amendments to the charter, passed in 1887, where any street has been paved or repaved, the common council is required to ascertain the whole expense thereof, and after deducting therefrom one-third to be borne

and paid by the city, it is required to assess the remaining two-thirds upon the property fronting upon the street; and the assessment complained of was made in this way. If there were no other statute bearing upon the case, there would be no doubt that this assessment was properly made and legal. It was the duty of the city, and it had authority to cause the paving to be done, and it caused the assessment to be made in precise accordance with the law.

In section 79 of the charter of 1862, it was provided that the common council should have the power to perform the duties and be subject to the liabilities of commissioners of highways in towns, with the exceptions and modifications contained in that act. And it was provided that it should have power " (1) To lay out, open, make, amend, repair, alter, extend, widen, contract and discontinue streets," etc. " (2) To clean the same and to pass ordinances requiring the same to be kept clean and in proper order," etc. " (3) To require, direct and regulate the planting, rearing and preserving of ornamental trees in the streets and public grounds of the city." " (4) To lay out, improve and ornament public parks and pleasure grounds, and to pass ordinances and regulations concerning their regulation and use." And by the amendment of section 79 in 1870 subdivision five was added as follows : " 5. To regulate the operating and running of street cars through any of the streets of the city; to cause the company or companies owning said railroads or tracks to keep the parts of the street occupied by them in good condition, and whenever in the opinion of the common council it shall be necessary, or proper, to cause any company or companies having two or more tracks laid through any street, to remove such track or tracks in excess of one track, and, whenever the common council shall determine to pave any unpaved street in which said railroad track shall be laid, the common council shall have authority to cause said company or companies to move said track or tracks and place the same on such portion of said street as the common council may direct. *The common council is hereby authorized to require all railroad companies operating railroads in*

*any of the streets of the city, to repave between their tracks,
and at least two feet in width on each outside thereof, whenever
the common council shall deem such repavement necessary.*
But nothing contained in this section shall be so construed as
to impair any rights which have heretofore been granted to or
acquired by the Utica City Railroad Company." The plain-
tiff claims that by virtue of the italicised portion of this
section, the railroad company was absolutely bound to pave,
or bear the expense of paving the street between its tracks,
and for two feet in width on the sides thereof, and that the
city, therefore, had no authority to impose the expense of such
paving upon the property fronting upon the street. We do
not think that the provision quoted is mandatory so as to abso-
lutely to bind the city to impose the expense of the paving
therein specified upon the railroad company. Whether the
common council should require the railroad company to do
this paving was discretionary with it, and its discretion was to
be exercised in view of all the circumstances; and if it deter-
mined for any reason that it would not be just, legal or proper
to impose the burden upon the railroad company it could omit
to do so. It will be observed that the powers conferred upon
the common council in section 79 are generally discretionary.
Certainly everything else contained in subdivision five is dis-
cretionary. We know of no rule of law which requires or
authorizes the courts to hold that such language under such
circumstances is mandatory and imposes an imperative duty
upon the common council, leaving it with no discretion what-
ever. There is no arbitrary rule for the construction of
such language. The purpose of construction and interpreta-
tion is to ascertain the legislative intent, and to that end it
is the general rule that words must receive their ordinary
signification, unless it can be seen that the law makers meant
that they should have a more limited or more enlarged
signification.

Generally, permissive words used in statutes conferring
power and authority upon public officers or bodies will be held
to be mandatory where the act authorized to be done concerns

the public interest or the rights of individuals. (*Minor* v. *Mechanics' Bank*, 1 Peters, 46; *Thompson* v. *Roe*, 22 How. [U. S.] 422; *N. & C. T. Co.* v. *Miller*, 5 Johns. Ch. 101; *Malcom* v. *Rogers*, 5 Cow. 188; *Mayor* v. *Furze*, 3 Hill, 612; *People ex rel.* v. *Supervisors*, 51 N. Y. 401; *People ex rel.* v. *Bd. Suprs.*, 68 id. 114.) The language is held to be mandatory in such cases, not arbitrarily, but because such is supposed to have been the legislative intention. There must be a definite, plain public interest, or a vested, well defined private right, and then it will very justly be supposed that the legislature meant to subserve or protect the public interest or to give or secure the private right. In *Thompson* v. *Carroll*, Mr. Justice GRIER, speaking of the cases where the word *may* may be construed to mean *must*, said: "It is only where it is necessary to give effect to the clear policy and intention of the legislature that such a liberty can be taken with the plain words of a statute." In *Minor* v. *Mechanics' Bank*, Mr. Justice STORY, speaking of the cases where permissive words in a statute may be held to be mandatory, said: "Without question such a construction is proper in all cases where the legislature meant to impose a positive and absolute duty, and not merely to give a discretionary power. But no general rule can be laid down upon this subject, further than that that exposition ought to be adopted in this as in other cases which carries into effect the true intent and object of the legislation in the enactment. The ordinary meaning of the language must be presumed to be intended unless it would manifestly defeat the object of the provisions." In *Newburgh Turnpike Co.* v. *Miller*, it was provided by an act of the legislature that "it shall and may be lawful" for the turnpike company to remove a particular toll-gate, and the Chancellor held that the act left it to the discretion of the company to remove the gate or not; and he announced the true rule of construction in such cases to be that the word *may* means *must* or *shall* only in cases where the public interest and right are concerned, and where the public or third persons have a claim *de jure* that the powers should be exercised. In

*Malcom* v. *Rogers*, it was provided by a statute that co-heirs "shall or may recover in one writ or action" as heirs of the deceased person ; and it was held that they were not compelled to join, but that in their discretion they could bring several actions. SUTHERLAND, J., writing the opinion, said : "In this case now under consideration the public has no direct or immediate interest in the question, nor have third persons a vested right, or as Chancellor KENT expresses it, 'a claim *de jure* to call upon the plaintiff to exercise the authority given by the statute to sue jointly with his co-tenants.' It is a power given for the benefit of the heirs, which they may exercise or not, at their discretion. It is permissive merely, and not compulsory."

Here the power was given to the common council to be exercised, not for the public generally, but for the benefit of the city. There was no definite public interest apart from the city to be subserved or protected. The common council might determine, in view of the circumstances of the road, the condition of the street, and the nature of the pavement, that it was for the interest of the city, that the street should be speedily paved in a particular way, under an entire contract and one supervision. Provided the street be kept in good condition, it is a matter of indifference to the public generally, who does it. The private owners of property fronting upon the street had no vested right or claim *de jure* that the railroad company should pave or bear the expense of paving any portion of the street. The railroad company was operating its railway in the street under lawful authority. It was using the street for a street purpose and subjecting it to a public use. It was engaged in the public service as a common carrier of passengers. If the same passengers had been carried over the street in ordinary vehicles no one would pretend that the carriers of them as such should bear any portion of the expense of paving or repairing the street. The general rule is that streets are to be kept in repair by the public generally, or by abutting owners who are most benefited by the good condition of the streets. The railway company originally came into this street by the consent of the abutting owners, because of the supposed

benefit to their property, or it came there after the private rights in the street had been taken by condemnation proceedings, and thus full compensation had been made for them. In either event, the abutting owners have no more right, vested or *de jure*, to demand that the railway company shall repair a worn-out pavement than it has to demand that anyone else who extensively used the street with carriages and wagons should do so. Their right may be greater in degree in the one case than in the other, but not fundamentally different. The abutting owners are greatly benefited by the presence of the railway in the street, and they cannot, as matter of right and of abstract justice, claim the further benefit of having a portion of the street paved and repaired by the railway company. It cannot, therefore, be said that the abutting owners had an absolute, immediate or vested right which the legislature intended imperatively to provide for in this statute, and hence the words must have their ordinary meaning and be construed as permissive only; and, therefore, it cannot be said that this provision of the charter was violated by the assessment as made.

In subdivision 4 of section 99 of the city charter it is provided that "whenever the owner or occupant of property bounding on any street, lane or highway shall fail to keep or put the sidewalk in proper repair in accordance with the rules, regulations or ordinances prescribed by the common council, the street commissioner shall repair the same, and the expense of such repair shall be a lien upon said property, and must be assessed and collected as other assessments for local improvements are levied, assessed and collected, except that the expense of repairing between and on the outer sides of street railroad tracks may be collected from said railroad company or companies as hereinafter provided." This provision relates only to the repair of sidewalks, and it is impossible to give any meaning or force to the latter portion thereof, as sidewalks are never laid between the tracks of street railways; besides the expense of this paving is not in any proper sense and certainly not within the meaning of the charter, an expense for repair-

ing, and no provision is anywhere made in the charter for collecting such expenses from the railroad company.

The Utica City Railroad Company, to whose rights and franchises the Utica Belt Line Street Railroad Company has succeeded, was organized under the Railroad Act of 1850, and it is provided in subdivision 5 of section 28 of that act that a railroad company may construct its road "along or upon * * * any street or highway," but that the "company shall restore the street or highway * * * · touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness."

It seems to be supposed by the learned counsel for the plaintiff that under that section the duty devolved upon the railroad company to do the paving between its tracks and for two feet on either side thereof. It is undoubtedly true according to the decisions of this court and of the Supreme Court, that under that provision a railroad company is not only bound to restore a street used by it to its former state, so as not unnecessarily to impair its usefulness, but is also bound to keep the portion of the street used by it in a reasonable state of repair. That certainly does not bind a railroad company whenever the municipality shall resolve to pave or repave a street to conform its repairs to the absolute directions and requirements of the municipality. In this case, by virtue of the General Railroad Act, this company could not be required to make the asphalt pavement. If it restored the street to its former usefulness and maintained it in that condition, it discharged its whole duty under the General Railroad Act. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 594; *Masterson* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 247; *People* v. *N. Y., N. H. & H. R. R. Co.*, 89 id. 266.) But if the railroad company was under some obligation to improve the pavement between and about its tracks, and, therefore, ought to have borne some portion of the expense of this pavement, the failure of the city to enforce that liability on its part does not render this assessment illegal. There was no special duty resting upon

the common council to enforce the liability.  If the owners of the property fronting upon the street had a peculiar interest to have that obligation on the part of the railroad company discharged, they could have taken proceedings on their own behalf to enforce it.

The Utica Belt Line Street Railroad Company was organized under the general act for the construction of street surface railroads (Chap. 252 of the Laws of 1884), section 9 of which provides that " every such corporation, incorporated under, or constructing, extending or operating a railroad constructed or extended under the provisions of this act, within the incorporated cities or villages of this state, shall also, whenever and as required and under the supervision of the proper local authorities, have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks, and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as it shall continue to use such tracks so constructed under the provisions of this act.  In case of the neglect of such corporation to make such pavement or repairs, the local authorities may make the same at the expense of such corporation after the expiration of thirty days' notice to do so."  But the Utica Belt Line Street Railroad Company was not operating its road under that act. By a lease authorized by chapter 305 of the Laws of 1885, it had succeeded to all the rights of the Utica City Railroad Company, and was operating the road in the right of that company, and hence that section has no pertinency.

This examination of the statutes shows that there is nothing in them forbidding the assessment upon the property fronting upon this street for two-thirds of the whole expense of paving the street, or requiring us to condemn this assessment as illegal.

But reliance for the maintenance of this action is also placed upon the condition upon which permission was given to the Utica City Railroad Company to build its road in the street. As the company accepted the permission upon the conditions imposed, and constructed its railroad thereunder, it must be held to have agreed to comply with the conditions and to do

what is required thereby; and thus it became bound "to replace and keep in good repair the pavement between and at least two feet in width on each outer side of" its tracks according to the directions of the city surveyor. But this being on the part of the company a contract, not a statutory obligation, it could not be enforced by mandamus. In case of refusal or neglect on the part of the company to perform its contract, the only remedy of the city is an action for damages. It does not appear in this record what, if anything, the city did to procure the railroad company to bear some portion of the expense of paving the street, and it does not appear what, if any, negotiations took place between the city and the company in reference thereto. The precise scope of the agreement growing out of the condition imposed upon the railroad company is not clear, and it was open to question whether the company could be compelled to bear any portion of the expense of this pavement. In case of refusal on the part of the company to do the paving or to bear the expense thereof, all that would be left to the city would be a cause of action to be enforced by litigation. While the litigation might be going on what was to become of the street, and how was that to be kept in repair, and the duty of the city in reference thereto to be discharged? Who was to determine whether the litigation should be entered on? The abutting owners are not parties to the contract, and it was not obtained for their especial benefit. The contract is with the city, and it could enforce or omit to enforce it, or it could entirely release or discharge it. There is nothing in the contract or the relations created thereby which prevented the city from paving the whole street and laying the assessment for the expense thereof as provided by the charter. If it had a cause of action against the railway company on account of the paving, it may yet enforce that, and it may be that the abutting owners would be entitled to their share of the benefit from such enforcement. The mere fact that the city possesses a cause of action against the company for breach of contract does not disable it from making a valid assessment

for the paving. It could determine for itself as party to the contract whether under all the circumstances it was wise, proper or just to require performance of the contract, and in case of refusal to enter upon a litigation to enforce performance or to recover damages for non-performance. If the case of *Appleby* (26 Hun, 427) is in conflict with these views we do not yield to it as authority.

Our conclusion, therefore, is that this assessment was not shown to be without jurisdiction and illegal, and that the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.