The People of the State of New York ex rel. Bryant W. Dinsmore, Appellant, v. Thomas F. Gilroy, Mayor of the City of New York, and Others, Constituting the Board of Estimate and Apportionment of the City of New York, Respondents.

*Statutory " may," when construed to mean " shall" — authority to audit and allow an account — a construction giving a municipality power to litigate claims made against it, favored — chapter 568 of 1888, as amended by chapter 291 of 1891, permissive, not mandatory.*

In case the language of a statute, authorizing a public body or a public officer to do an act, uses the word "may," and the act authorized relates to the interests of the public or to the rights of persons, or if the act authorized be to promote justice, the word "may" is generally considered to mean "shall," and the statute is deemed mandatory and not permissive; but when such rule is invoked in aid of a personal right the right must be an existing legal one and not one which the board or officer is by the statute authorized to create.

To audit an account is to examine and ascertain whether it is accurate. To allow an account or claim is to accept or admit it as a legal demand. The authority to audit and allow an account primarily implies the right to determine whether it is an accurate and just claim, and authority given to a board by a statute to allow an account does not necessarily negative the existence of power in the board to disallow it.

The right of a municipal corporation to litigate the validity of claims made against it should not be denied, unless it be deprived of that right by a statute so unequivocal that it needs neither argument nor illustration to make the legislative intent manifest.

Chapter 568 of the Laws of 1888, as amended by chapter 291 of the Laws of 1891, is a permissive and not a mandatory statute.

Such act does not recognize the justice of the claim therein referred to, either expressly or by fair implication, nor does it create a liability on the part of the city of New York to pay the claim therein referred to, or any part thereof, and power exists in the board of estimate and apportionment of the city of New York to disallow the claim referred to in such statute.

Appeal by the relator, Bryant W. Dinsmore, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of June, 1894, denying the relator's motion for a peremptory writ of mandamus.

In the years 1868 to 1871, inclusive, S. P. Dinsmore & Co. published at the city of New York a weekly paper called *The Stockholder*, during which time official notices and proceedings of public

boards and officers of the city and county of New York, required by law to be published, were published in that paper, some pursuant to the order of the then mayor and comptroller of the city, and some pursuant to the order of the mayor.    The first publication charged for was made October 6, 1868, and the last one October 10, 1871.    On the 18th of May, 1872, the firm presented to the financial department of the city a claim for such publications, amounting to $70,962.94, which was submitted to the examiners of said department, who reported January 11, 1873, that there had been published in the paper 138,447 lines of official matter, which at the customary rate for such work — twenty-five cents a line — amounted to $34,611.75, but they found that 110,721 lines were published without being authorized by both the mayor and comptroller of the city, which left 27,726 lines which were published by the direction of both officers, which, at twenty-five cents a line, amounted to $6,931.50, at which sum they recommended that the claim be allowed.    On the 11th of January, 1873, the claim was audited by the board of apportionment and audit at $6,931.50, which was paid to the firm January 16, 1873.    Before the comptroller would pay the sum he insisted that a release of all demands should be executed, which was done, but, concurrently with its delivery, it is alleged by the relator that the firm filed a protest against the payment being considered in full of all demands.

But a single publication is charged for in 1868, an item of seven dollars and twenty cents, which was allowed January 11 and paid January 16, 1873.    The following are the statutes authorizing and regulating the publication of official proceedings of the boards and officers of the city of New York in the years 1869, 1870 and 1871: By section 1 of chapter 854, Laws of 1868, passed June 3, 1868, "An act to make provision for the government of the county of New York," the sum of $30,000 was appropriated as follows: " Advertising for the board of supervisors and county government, thirty thousand dollars; but no payment shall be made therefor except for advertising in newspapers designated for that purpose by the mayor and comptroller."    By section 1, chapter 875, Laws of 1869, passed May 12, 1869, "An act to make provisions for the government of the county of New York," it was provided: "Advertising, forty thousand dollars.    The mayor and comptroller shall,

from time to time, designate six daily newspapers and six weeklies, but no more, in which to publish the proceedings of the board of supervisors, and all proceedings and notices relating to county affairs.' By section 1, chapter 383, Laws of 1870, passed April 26, 1870, "An act to make further provision for the government of the city of New York," it was provided:

"Advertising for common council, forty-five thousand dollars. All advertising for the city government hereafter, including the legislative and executive departments, and in street and assessment proceedings, shall be published in not more than seven daily and six weekly newspapers, printed and published in said city, to be designated from time to time by the mayor and comptroller of said city, and it shall not be lawful for any officer to pay or allow to be paid any money for advertising hereafter made or incurred, of any description for or on account of the corporation, except to such newspapers, and any such officer making or allowing any such payment shall become personally liable for the amount so paid."

By section 1 of chapter 574, Laws of 1871, passed April 18, 1871, "An act to amend an act entitled 'An act to reorganize the local government of the city of New York,' passed April fifth, eighteen hundred and seventy," it was provided:

" On or before the first Monday of June in each and every year, the mayor and comptroller shall, by a certificate in writing filed in the office of said comptroller, designate one daily paper published in the city of New York to be the official journal of said city, and in which shall be published all matters herein required to be published, as well as every notice or advertisement, corporation or legal, which may be required by law or ordinance to be published in one or more papers in the said city or county. If such notice or advertisement is required to be published in only one paper, then such publication shall be in said paper; but if such notice or advertisement is required to be published in more than one paper, then one of such requisite papers shall be the paper so designated as the official journal. The mayor and comptroller shall also, in writing to be filed in the office of said comptroller, designate from time to time nine morning or evening daily newspapers, and nine weekly newspapers published in the city of New York, to publish such digest of the proceedings of the common council as may be prepared and author-

ized under the direction of said mayor and comptroller, and also to publish such notices or advertisements required by law or ordinance to be published in corporation papers, which designations shall be authority to the several newspapers so ·as aforesaid designated to publish as aforesaid. No publication of corporation proceedings or notices or advertisements, as aforesaid, shall be legal except in the newspapers selected as above provided, and no money shall be paid from the city treasury for advertising for the city thereafter except to the newspapers so selected. It shall be the duty of any officer authorizing any publication in either of said papers to furnish an order signed by him or by his authority as to the publication thereof, and such order shall be attached to all bills paid ; and no bills shall be paid without such order be attached, and in addition the bill shall always be certified by the officer under whose direction such publication is made. But no final judgment against the said city heretofore obtained or which may hereafter be obtained for the publication of any such advertisements shall be allowed or paid from the treasury of said city, unless such advertisements were published in those newspapers which may be designated by the mayor and comptroller in pursuance of this section, and no execution shall be issued on any final judgment based upon any claim for such advertisements in any newspaper unless in such newspaper to be designated as herein provided."

When the publishing was done and the aforesaid payment made, the firm consisted of Samuel P. Dinsmore and Mary Y. Bean, and, in July, 1881, the latter sold her interest in the firm and claim to the relator, who then became a member of S. P. Dinsmore & Co., which continued in business until April, 1892, when Samuel P. Dinsmore died, leaving the relator the sole surviving partner.

In 1874 or 1875 an action was brought against the city (67 Barb. 341) to recover the claim, less the $6,931.50 paid, in which the plaintiffs were defeated because the advertising had not been ordered by the mayor and comptroller. The city having refused to pay any further sum for the service, a statute was passed June 9, 1888 (Chap. 568, Laws of 1888), and was amended by chapter 291, Laws of 1891, which provides :

" § 1. The board of estimate and apportionment of the city and county of New York is hereby authorized to examine into the facts

relating to the claim of the representatives of the firm of S. P. Dinsmore & Company for advertising in the newspaper, *The Stockholder*, notices and proceedings required by law to be published in said city and county, and to audit and allow the said claim for advertising said notices and proceedings as have been reported by the special examination of the department of finance of said city to have been inserted in the said *Stockholder*, at the usual and customary rates for advertising in said newspaper, so far as the same shall be found not to have been heretofore audited, allowed and paid. And the said comptroller is hereby authorized to pay to said representatives the amount of the claim as so audited and allowed, with interest.

" § 2. The amount so audited and allowed shall be certified by the comptroller to the board of aldermen of the city and county of New York, and shall form part of the final estimate of said city and county for the year eighteen hundred and ninety-one."

After the passage of this act the claim was again presented to the board of estimate and apportionment, which refused to take any action thereon, and, March 20, 1894, a peremptory writ of mandamus was granted requiring the board to " forthwith take up and audit the claim referred to in chapter 291 of the Laws of 1891." The writ further provided : " Beyond this, this writ does not run, nor is this writ to operate as an adjudication upon the question whether the act known as chapter 291 of the Laws of 1891 is or is not mandatory upon the Board of Estimate and Apportionment as to the amount to be allowed."

Pursuant to this writ the board appointed a hearing, of which the relator had notice, and, after taking the evidence offered by both sides and hearing counsel, the board made its return on May 23, 1894.

" 8. That on said 22d day of May, at said meeting of the Board of Estimate and Apportionment, and after the making and filing of the Board (report) of said committee, and after hearing Roger Foster, Esq., as above set forth, the said board of estimate and apportionment of the city of New York did take up and audit the claim referred to in chapter 291 of the Laws of 1891, and did audit and allow said claim at nothing."

On June 25, 1894, the relator moved for a peremptory writ of mandamus requiring the board to audit and allow the claim for pub-

lishing 110,721 lines, at thirty cents a line, amounting to $33,216.30, besides interest, and requiring the comptroller to pay the same. The motion was denied, and from the order the relator appealed.

*Roger Foster*, for the appellant.

*Wm. H. Clark*, *Charles Donohue* and *Theodore Connoly*, for the respondents.

FOLLETT, J.:

It must be borne in mind that the relator applied for a peremptory writ and did not offer to take an alternative one. The facts upon which the rights of the litigants must be determined are not disputed. It is agreed that S. P. Dinsmore & Co. published 27,726 lines of official matter upon the order of the mayor and comptroller, for which the firm has been paid $6,931.50, at the rate of twenty-five cents a line, and gave a release of all demands against the city. The city admits that the firm published 110,721 lines upon the order of its mayor alone, for which the city has refused to pay. The firm brought an action against the city to recover for this work and was defeated because the comptroller did not join with the mayor in ordering the work. Under this state of facts the statute quoted was passed, and the principal question involved in this appeal is whether the statute is mandatory or permissive.

In case the language of a statute authorizes a public body or a public officer to do an act, using the word " may," and the act authorized relates to the interests of the public, or to the rights of persons, or if the act authorized be to promote justice, the word " may " is generally considered to mean " shall," and the statute is deemed mandatory and not permissive. (*People ex rel. Otsego Co. Bank* v. *Supervisors of Otsego*, 51 N. Y. 401; *People ex rel. Conway* v. *Supervisors of Livingston*, 68 id. 114; Sedg. Stat. Law [2d ed.], 375.) This is a well-settled rule of construction, and the cases wherein it is laid down are referred to in the above authorities, and it is unnecessary to cite them again. But when the rule is invoked in aid of a personal right, the right must be an existing legal one, and not one which the board or officer is by the statute authorized to create.

(*Gilmore* v. *City of Utica*, 121 N. Y. 561; *Buffalo Plank Road Co.* v. *Commissioners*, 10 How. Pr. 239; *Newburgh Turnpike Co.* v. *Miller*, 5 Johns. Ch. 101; Sedg. Stat. Law [2d ed.], 375, *et seq.;* Potter's Dwarris, 220, and Endlich Interp. Stat. § 313.)

In *Gilmore* v. *City of Utica* (*supra*) it is said that before this rule of construction will be applied in aid of a public interest or of a private right " There must be a definite, plain public interest, or a vested, well-defined private right, and then it will very justly be supposed that the Legislature meant to subserve or protect the public interest or to give or secure the private right."

The limitation, that the statute must relate to an existing private right before " may " shall be construed to mean " shall," is as firmly settled as the general rule first above stated.

The statute under consideration does not relate to a public interest, and it is conceded by the relator that prior to the statute (Chap. 568, Laws of 1888) he had no existing legal right to recover for the services rendered. It had been so held by the Supreme Court in an action brought against the city, which judgment was not appealed from and is conclusive. Should " may " be construed " shall" on the ground that the statute was passed to do justice to the relator ? This inquiry brings us to the question whether the statute recognizes the justice of the claim, for, unless it does, expressly or by fair implication, the act will not be held to be mandatory. Clearly, if the justice of the claim is not declared, but left to be determined, the statute must be held to be a permissive one, and a peremptory writ of mandamus is not an appropriate remedy. This statute does not expressly declare the claim to be a just one, or direct that it shall be paid, nor can it be implied from the language of the act that the Legislature passed the statute because it deemed the justice of the claim established. The language is: " The board of estimate and apportionment of the city and county of New York is hereby authorized to examine into the facts relating to the claim." What facts are they to examine into ?

The learned counsel for the relator says that the board had authority to determine simply what were the customary rates of *The Stockholder* for such work. In other words, that it was intended by the statute to require the city to pay the customary rates for advertising the notices and proceedings " reported " by the special

examination of the department of finance to have been published in *The Stockholder*.

After having examined into the facts, the board is to " audit and allow " the claim for advertising notices and proceedings, which, according to the report of the department of finance, had been published in *The Stockholder* at the usual and customary rates for advertising in that paper.

To audit an account is to examine and ascertain whether it is accurate. To allow an account or claim is to accept or admit it as a legal demand. The authority to audit and allow an account primarily implies the right to determine whether it is an accurate and just claim. (*Morris* v. *The People*, 3 Den. 381, 391 ; *People ex rel. Sherman* v. *Supervisors of St. Lawrence*, 30 How. Pr. 173 ; *People ex rel. Byrnes* v. *Green*, 64 Barb. 162 ; *People ex rel. Brown* v. *Green*, 5 Daly, 194 ; *People ex rel. Benedict* v. *Supervisors of Oneida*, 24 Hun, 413 ; *Matter of Murphy*, Id. 592 ; *People ex rel. Myers* v. *Barnes*, 114 N. Y. 317.)

Authority in a statute to allow an account does not necessarily negative the existence of power to disallow it. (*People ex rel. Board of Health* v. *Supervisors of Dutchess*, 9 Wend. 508.) Of course, the word " allow " may be so used in connection with other words in a statute as to negative the idea of power to disallow, but we think it is not in this statute.

The right of a municipal corporation to litigate the validity of claims made against it should not be denied, unless it be deprived of the right by a statute so unequivocal that it needs neither argument nor illustration to make the legislative intent manifest. In other words, in case the Legislature intends to compel a municipality to pay a particular claim, which it is not legally liable to pay, it must say so out and out. A statute like the one under consideration can easily be passed on the plea that it simply confers authority on the corporation to pay the claim, if, after an examination into the facts, it is found to be just, but a plain statute commanding a municipality to tax its citizens for the purpose of paying a claim conceded to be illegal would not readily be enacted.

Applying these rules to the construction of this statute, we do not think it required the board of estimate and apportionment to audit and allow the relator's claim against the city for publishing

110,721 lines at the usual rates, regardless of whether the claim was just.

The order should be affirmed, with costs.

Van Brunt, P. J., and O'Brien, J., concurred.

Order affirmed, with costs.