The only question involved in this case is, upon whom rests the obligation of maintaining the bridge in Livingston county, between the towns of Geneseo and Leicester, over the Genesee river.
The plaintiff repaired the bridge upon the employment of the former commissioners of highways of those towns, at an expense of $6,000, and sues their successors therefor.
Defendants insist that the bridge is a county charge.
Whether it is so or not depends upon the construction to be given to the language of the act incorporating the "Leicester Bridge Company" to construct a bridge at this point in 1837.
In the ninth section of that act it was provided that if the bridge shall not be completed within three years, or if, when completed, it should be impassable for fifteen days for want of repairs, unless carried away by unavoidable accident, or if the same shall not be rebuilt within eighteen months, then "the bridge shall become a public bridge, and may be maintained at the expense of the county of Livingston." (Laws of 1837, § 9.)
Was this permissive or mandatory to the county?
There are reasons why it should be mandatory.
It appears that the stream to be crossed is a river, and the expense of the construction and repair of a bridge would be very onerous to the two opposite towns; more so then, probably, than now.
The corporation, chartered in 1837, that first constructed the bridge, with the right to take toll for thirty years if kept in repair, etc., abandoned the bridge when it was swept off some fifteen years after the charter. It could not be made profitable.
The county of Livingston then rebuilt it. *Page 27 
The course of legislation as to bridges over that river shows the legislative sense, that they should be substantially a county charge; three or four having been built by the county under statute authority.
Again, if this act be merely permissive to the county it confers little if any substantial additional power. The county then had authority to build it or to aid any town or towns in its construction, in a limited way, in its discretion. (1 R.S., 524, § 119, citing the statute 2 R.L., 281, § 33.)
Again, the towns, on opposite sides of a stream, at that time had no regulation by statute, no organization to be put in motion to accomplish the construction of a bridge. The first act passed upon that subject was in 1841. (Laws of 1841, p. 207.)
Under that act bridges could be built though towns were reluctant to do their duty. (See Hill v. Board of Supervisorsof Livingston County, 12 N.Y., 52.)
There would thus seem to have been a propriety in 1837 that the county should have maintained this bridge.
But the act contains apt and legal language to require the county to do it. It says it shall "become a public bridge, and may be maintained" by the county.
This is a direction to a public body (not an option to a private person or corporation), in the execution whereof the inhabitants of that county have a pecuniary interest. In fact, the public generally may be said to have such an interest. Where persons or the public have an interest in having the act done by a public body, "may," in such a statute, means "must." (NewburghTurn. Co. v. Miller, 5 J.C., 113; Malcolm v. Rogers, 5 Cow., 188.)
This rule must prevail where there is nothing that would evince a contrary intention in the statute or in the surrounding facts.
This disposes of the question.
It is conceded, as it well may be, that if the county by this act was required to maintain this bridge, no act of the commissioners could bind the town, as they then had no *Page 28 
authority over the bridge. Its maintenance was specially provided for. Whether the commissioners can involve the towns in debt without limit for bridges it is not necessary to decide.
The judgment should be affirmed.
All concur.
Judgment affirmed.