THE PEOPLE ex rel. SARAH CONWAY, Appellant, *v.* THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY, Respondent.

A bridge upon a public highway, across a stream, dividing two towns, having been swept away, C. rebuilt it under a contract made in good faith with the commissioners of highways of the two towns, and the public have ever since used it.  It was the duty of the county to construct the bridge, but in an action against the county it was held not liable because it had not ordered the construction, and it was not done under its direction.  Thereupon an act was passed (chap. 156, Laws of 1872) entitled "an act for the relief of C. and others," by which the board of supervisors of the county were "authorized to adjust and audit the claims" of C. and others, to allow so much as the work was worth, not exceeding the contract price, and to cause the amount to be levied and collected upon the two towns or upon the county, in their discretion.  *Held*, that the act was mandatory, and that in construing it no weight could be given to the fact that an act passed by a former legislature, mandatory in form, was vetoed on that ground.

The claim of C. was presented to the board of supervisors, who referred it to a committee, but resolved that the levying and assessing of any sum to pay the same should be conditional upon the execution of a bond on the part of the claimant to protect the county from any expense arising from any litigation growing out of the action of the board, and upon the discontinuance of actions then pending.  The committee reported, recommending

1877.]       PEOPLE ex rel. CONWAY v. SUPERVISORS.       115

Statement of case.

that a certain sum be allowed, and that it be levied and assessed upon the two towns, but not to be levied or assessed until such resolution was complied with. This report was adopted by the board. C. or his assigns did not comply with the resolution. *Held*, that the condition was unauthorized; that having determined the amount and that it should be paid by the towns, it was the duty of the board to cause the tax to be assessed; that the claimant did not waive any objection thereto by appearing and presenting his claim; and that a writ of *mandamus* properly lay to compel the board to assess and collect the amount allowed.

By their return to an alternative *mandamus* the board alleged that C. procured the insertion of a certain provision in the contract, and procured the acceptance of the work by fraud, and also that he did not do the work according to the contract. *Held*, that these allegations were immaterial, as the contract was repudiated, the relator was not seeking to enforce it, and the audit and allowance was the actual value of the work, without reference to the contract, save as a limit to the amount of the allowance.

Also, *held*, that it was no objection to the issuing the writ that the relator did not demand, before applying for it, that the board should cause the tax to be levied and collected.

*People ex rel. Conway* v. *Supervisors* (6 Hun, 572) reversed.

(Argued December 7, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant, on a demurrer to a return to an alternative writ of *mandamus*, denying a peremptory writ and dismissing the alternative writ. (Reported below, 6 Hun, 572.)

The alternative writ recited, in substance, that the commissioners of highways of the towns of Geneseo and Leicester, in the county of Livingston, entered into a contract with James Conway, the relator's assignor, for the construction of a bridge over the Genesee river, which divides the two towns; that Conway did construct the bridge according to the contract and the same was accepted by the commissioners; that upon the passage of the act, chapter 156, Laws of 1872, the board of supervisors of the county of Livingston audited and allowed the claim at $5,500, but did not cause the same to be collected, as provided by the act. The writ directed the board to cause that sum "to be levied, collected and paid over to the relator,"

or show cause, etc. The provisions of said act are set forth in the opinion. The return, in substance, admitted the making of the contract and that Conway constructed the bridge, but denied that he did it according to the contract. It admits that the work was accepted by the commissioners, but alleged that the acceptance was procured by fraudulent representations; that the contract had been performed, and upon the faith of a fraudulent warranty. The action of the board, after the passage of the act and further facts, as set forth in the return, appear sufficiently in the opinion. Plaintiff demurred that the return was insufficient to bar or preclude the relator from the relief demanded.

*J. C. Cochrane* for the appellant. The act of 1872 (chap. 156) established rights and imposed a duty. (*People ex rel.* v. *Suprs. Otsego Co.*, 51 N. Y., 401.)

*S. Hubbard* for the respondent. The act of 1872 (chap. 156) was unconstitutional and void. (Const., art. 3, § 16; *Baldwin* v. *Mayor, etc.*, 42 Barb., 549, 552; 2 Keyes, 387, 395; *People* v. *Hawes*, 37 Barb., 440, 453.)

Earl, J. James Conway, the assignor of the relator, constructed the bridge under a contract made with the commissioners of highways of the towns of Geneseo and Leicester. The work was to be done under the direction and subject to the approval and acceptance of such commissioners. After Conway had constructed the bridge, the commissioners accepted the work and the public have since used the bridge. In September, 1870, in the case of *Phelps* v. *Hawley* and others commissioners of highways of the two towns (reported in 3 Lansing, 160), the Supreme Court decided that the towns were not bound to build or repair the bridge and were not liable upon contracts made for repairs by the commissioners. That case was affirmed in the Court of Appeals and it was held that it was the duty of the county of Livingston to maintain the bridge. (52 N. Y., 23.) In a suit against the county to

recover for building the bridge, the county claimed that it was not liable because it had not ordered the construction of the bridge and it was not in fact constructed under its direction and it succeeded in its defence. It turned out, therefore, that Conway had in good faith constructed a bridge for which the towns were not liable because they were not bound to maintain it, and which the county was bound to maintain, but for which it was not liable because it had not ordered the construction.

There was dispute as to the manner in which Conway had done his work, the claim being made on the part of the public that, notwithstanding the acceptance, by the commissioners of highways, the work was not done well or in accordance with the requirements of the contract.

Under these circumstances, in 1872, application was made to the legislature for relief, and the act (chap. 156) of that year was passed. It is entitled "An act for the relief" of Conway and others, and to authorize the board of surpervisors of the county of Livingston to audit and allow" the claims for constructing and repairing the bridge, and "to levy a tax for the amount allowed." The first two sections of the act are as follows:

(1.) "The board of supervisors of the county of Livingston, at their first annual session, after the passage of this act, is hereby authorized to adjust and audit the claims of Simon DeGraff, James Conway, and George W. Phelps, for constructing and repairing a bridge over the Genesee river, between the towns of Geneseo and Leicester, in said county of Livingston, under contracts made by and between the commissioners of highways of said towns, and said claimants, in the year 1866 or 1867. The said board may allow to the said claimants, respectively, so much for the work done and material furnished by them, respectively, as the same was reasonably worth, not exceeding the contract-price, together with the interest thereon, from the time when, by the terms of the contract, the same became due. And in adjusting and auditing the claim of said Conway, the said board are author-

ized to make such deduction therefrom as shall be deemed just and reasonable, if it shall appear that the work performed by him was done in an unskillful or negligent manner, and that damages were sustained thereby.

(2.) " The said board may cause to be levied and collected upon the said towns of Geneseo and Leicester such sums as shall be found necessary to pay the amounts allowed to such claimants as herein provided, the amounts so to be raised to be apportioned between said towns in proportion to the taxable property thereof, as appears by the assessment rolls of said towns; or the said board may, in their discretion, cause the said sums to be levied and collected upon the county of Livingston, in the manner provided by law for raising money for the construction of bridges, if it seems to said board of supervisors equitable and just so to do."

The most important question to be determined upon this appeal is, whether this act is mandatory or simply permissive to confer authority upon the board of supervisors to act or not in their discretion. We are of opinion that it is mandatory.

A bridge upon a public highway, across a stream dividing two towns was swept away by a freshet. It is usually the duty of the towns to rebuild such bridges, and Conway and the highway commissioners of the two towns believing that such was the duty of the two towns, in good faith entered into a contract for the construction of the bridge, and Conway constructed it and the public have ever since used it. It turns out that it was the duty of the county to construct the bridge, and Conway had thus discharged a duty which devolved upon the county. There are legal obstacles in the way of his getting his pay from either the towns or the county. He has rendered a service for the public for which he expected to be paid, and for which he ought to be paid either by the towns or the county. He has a claim founded in natural equity and justice for the actual value of the structure which he built and the towns or county should in some way be compelled to pay him. Under such circumstances he goes to the legislature, and it knowing, as we are bound to believe, the facts, pass an act

for his relief. The relief might be quite illusory if it was intended to leave it to the debtors to say whether they would pay or not. No act was necessary to enable the supervisors to pay for this bridge if they were willing to. They were bound to maintain the bridge, and Conway having placed one there they could adopt it and purchase it of him, and pay him for it. They had the same right to do this as they had to order its construction in the first instance, but they were not bound to. Hence it cannot be supposed that it was the intention of the legislature simply to confer a permissive authority to do what they could do without the act, if willing. The title of the act and the provisions of the act recognize the existence of the claim, and the plain object of the act, so far as concerns Conway, was to provide that he should be paid the actual value of the bridge to the public, and to that extent, his claim was recognized as just. Here was something directed to be done for the sake of justice, and in such a case the word "may" is generally construed to mean "shall." (*People ex rel.* v. *Supervisors of Otsego County*, 51 N. Y., 401, and cases cited.) Where it is merely indifferent whether a thing shall be done or not, then the word "may," in an act is usually construed to confer a permissive authority; but where the public interest or private right requires that the thing should be done, then the word "may" is generally construed to mean the same as "shall." In such a case, it must be presumed that it was the legislative intent to confer the authority for the purpose of promoting the public interest or securing the private right. In this case the legislature, knowing that Conway had built a bridge upon a public highway, under what he supposed to be competent authority, which was of some value to the public and that to the extent of such value he ought, in justice, to be paid, cannot be supposed to have left it discretionary with the representatives of the public whether they would pay him or not.

But it is said that the legislature of 1871 passed a bill for the relief of these same claimants which was mandatory in form requiring the board of supervisors to audit and allow the claims,

and that it was vetoed by the governor on the ground that it was mandatory, and it is claimed that these circumstances should have much weight in construing this act. The circumstances are too remote to have much weight. If the act had been passed by the same legislature immediately after the veto and the change in the language had been made to obviate the objection of the veto, a different question would have been presented. But the legislature of 1872, was a new body in both branches thereof, and it does not appear that the bill of 1871 or the veto was brought to its attention and its intent must be gathered from the language it used. The governor, in approving the act of 1872, may have had fuller information as to the nature of the claims and may thus have been willing to approve a mandatory act. These circumstances furnish uncertain light, and we might be misled in relying upon them. It is safer to take the language of the act, and considering the nature of the claims and the apparent object to be accomplished to construe it according to the sanctions of precedent and authority.

At the first annual session of the board of supervisors after the passage of the act of 1872, the Conway claim was presented to them and they adopted the following resolutions :

" *Resolved,* That the levying and assessing of any sums upon the towns of Geneseo and Leicester for the payment of the claims of George W. Phelps, Simon De Graff and James Conway, or James Conway's assignment of his claim, be conditioned upon the execution of a proper and acceptable and sufficient bond for the sum of five thousand dollars to be made by each, or either of said parties, to protect the county from any expense arising from any litigation which may grow out of the action of the board upon these claims, and a proper discontinuance of the several suits now pending in the courts upon these claims.

" *Resolved,* That the claims of George W. Phelps, James Conway and Simon De Graff be referred to a select committee of three to examine said claims and take testimony as to the value of the work and materials furnished by said claimants

severally, and how far such work and materials complied with the requirements of the contracts under which said work was done, and that the commissioners of highways of Geneseo and Leicester be given three days' notice of the time and place of hearing and be permitted to give evidence and produce witnesses before such committee."

The select committee was appointed, and after taking testimony the committee reported that they had considered the claims, and had heard a large mass of testimony adduced before them by the claimants, and also by the two towns, "in respect to the work, labor and material furnished and expended in the said erection and repair of said bridge, and also as to the manner said work was done, and as to the quality of the work when completed, and also the condition of the structure at the present time;" and they recommended that certain sums be allowed to the claimants, the amount to Conway or his assigns being $5,500. They also recommended that the several amounts awarded should not be levied or assessed until there was a full compliance with the first resolution above set out, and that the amounts required to pay the awards be "levied, assessed and spread upon the tax rolls of the two towns," and that the amounts, when so collected, be paid to the county treasurer, to be by him paid to the claimants upon the orders of the supervisors of the two towns. This report was, by resolution of the board, adopted.

There has been no compliance by Conway or his assigns with the requirements of the first resolution above set out, and hence the claim is made on the part of the board of supervisors that they were not bound to levy the tax. This claim is not well founded. They were bound to do two things : First, To ascertain, audit and allow the amount to be paid to the claimants under the act; second, To determine whether the amounts thus allowed should be paid by the two towns or by the county. These two things they have done. They determined the amounts to be allowed, and that the money to pay them should be raised by taxation upon the two towns. When they had determined these two things, their

next duty was to cause the tax to be assessed, and included in the tax rolls of the two towns. The audit and the determination that the two towns should pay the amounts were unconditional, and they had no right to exact as a condition to the further discharge of a plain duty that the claimants should give the bonds and discontinue suits as required in the resolution.

It cannot be said that the claimants waived all objection to the conditons by appearing before the board and presenting their claims. The conditions were not as to the audit and allowance, but as to the payment of the claims. The claimants were bound to present their claims for audit and allowance. In no other way could they get the benefit of the acts. They waived nothing, and after the audit and allowance, the result followed which is above indicated.

There is no admission upon the record, as supposed by the counsel for the defendants, that the Conway claim is fraudulent. It is alleged in the return that a certain specification was procured by Conway to be inserted in the contract by a false and fraudulent representation as to its meaning and effect, and that he procured the acceptance of the work by the commissioners by the false and fraudulent representation that he had fully performed his contract; and it is alleged, also, that he did not do the work according to the contract, but it is not alleged that the work was not done under the supervision and direction of the commissioners, or that they did not know how it was done when they accepted it, or that it was not worth the amount audited and allowed.

But these allegations are wholly immaterial. Both the towns and the county having repudiated the contract cannot complain that it was not performed. The relator is not seeking to enforce the contract, and it was not the design of the legislature to enable any one to recover pay upon the contract. It was simply intended to provide for the payment of so much as the work was worth to the public, and the only importance of the contract is to show that the work was done by Conway, not as a volunteer, but upon what he supposed to

be competent authority, thus laying the foundation for an equitable claim to the extent of value given. The audit and allowance was to be wholly without reference to the contract, except that the amount allowed should not be greater than the contract price. It was upon this theory that the audit and allowance were actually made by the board, and the act of the legislature was thus followed and complied with. We must assume that every deduction from the amount claimed was made which could be made, and that the amount allowed was the actual value of the work to the public.

It is no objection to the granting of the writ that the relator did not demand, before applying for it, that the defendants should cause the tax to be levied, collected and paid to her. Her claim had been audited and allowed, and they had passed a resolution that they would not levy and assess the amount until she complied with the illegal conditions. Her claims had been made and this was a sufficient refusal to authorize her application for the writ.

We have carefully considered the constitutional objections to the act of 1872, and they are so clearly without foundation as to require no particular notice.

The form of the writ is unobjectionable, and it must be obeyed. It is indifferent to the relator whether the tax be levied upon the two towns or the county. The board of supervisors have a discretion in the matter, and they must levy it upon one or the other.

The judgment must be reversed and judgment given for the plaintiffs, with costs.

All concur.

Judgment accordingly.