258   PEOPLE ex rel. COMSTOCK v. CITY OF SYRACUSE.

FOURTH DEPARTMENT, FEBRUARY TERM, 1891.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE F. COMSTOCK, Respondent, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF SYRACUSE, Appellant.

*Statute — when permissive, and not mandatory.*

Section 19 of chapter 475 of the Laws of 1889, amending section 106 of chapter 26 of the Laws of 1885, provides that the aggregate of the annual city tax levied in the city of Syracuse, exclusive of local assessments, shall not exceed $700,000, "provided, however, that in the city tax levy for the year 1889 there *may* be included, in addition to the annual levy provided for by the section hereby amended, the following named sums for the purposes specified, to wit.  *  *  * for payment, in whole or in part, of the cost of opening and improving Comstock avenue, a sum of five thousand dollars."

*Held,* that the language of the statute was clearly permissive, and not mandatory.

That as there was nothing in the surrounding circumstances or in the apparent purpose of the act which tended to show that the word "may," as used in the statute, was intended to be mandatory, it could not be construed to be so.

APPEAL by the defendant, the Mayor and Common Council of the City of Syracuse, from an order of the Supreme Court, made at Special Term and entered in the office of the clerk of the county of Onondaga on the 15th day of September, 1890, granting a peremptory writ of *mandamus*, directed to the defendant, requiring it to include the sum of $5,000 in the annual tax levy of the city of Syracuse, for the year 1890, for the payment, in whole or in part, of the cost of opening and improving Comstock avenue.

*C. L. Stone*, for the appellant.

*C. H. Peck*, for the respondent.

MARTIN, J. :

This was an appeal from an order directing that a peremptory writ of *mandamus* issue requiring the mayor and common council of the city of Syracuse to include in the city tax levy for the year 1890 the sum of $5,000 for payment, in whole or in part, of the cost of opening and improving Comstock avenue in that city.

The order was based on the provisions of section 19, chapter 475, Laws of 1889, amending section 106 of chapter 26, Laws of 1885. Before the amendment of 1889 that portion of the statute of 1885

which was amended was as follows : "§ 99. The common council of the city of Syracuse shall have authority and are hereby empowered to raise by tax upon the property of said city in each year as follows." After specifying the amounts that might be raised for several specific and general purposes, it further provided : "Section 106. The aggregate of the annual city tax levy, exclusive of local assessments, shall not in any year exceed the sum of four hundred and twenty-five thousand dollars for all purposes." By the statute of 1889 this last section was amended so as to read as follows : "The aggregate of the annual city tax levy, exclusive of local assessments, shall not in any year exceed the sum of seven hundred thousand dollars for all purposes ; provided, however, that in the city tax levy for the year one thousand eight hundred and eighty-nine there may be included, in addition to the annual levy provided for by the section hereby amended, the following named sums for the purposes specified, to wit : For the expenses of the police department, the poor department and the board of health, and other expenses theretofore paid by the board of city auditors, incurred since December fifteen, one thousand eight hundred and eighty-eight, a sum not exceeding forty-two thousand dollars. For the purchase and equipment of a police electric signal alarm system, a sum not exceeding fifteen thousand dollars. To provide for payment of the city's share of the cost of the Croton street sewer, a sum not exceeding seventeen thousand dollars. For the construction or contribution toward the cost of constructing a bridge and approaches over the tracks of the New York Central and Hudson River Railroad Company, the Delaware, Lackawanna and Western Railroad Company, and the Erie canal, where the same cross West Genesee street in said city, a sum not exceeding ten thousand dollars. For payment in whole or in part of the cost of opening and improving Comstock avenue, a sum of five thousand dollars. For the city's share of the cost of the improvement of Wilbur avenue and the extension and improvement of Milton avenue in said city, the sum of thirty thousand dollars, or so much thereof as may be estimated by the city engineer as necessary for the purpose ; the remainder of any sum so raised, if any, not required for such improvement and extension, shall be applied to the improvement of Burnet park. Provided, also, that in the annual city tax levy for each of the fiscal years, one thousand eight hundred

and eighty-nine and one thousand eight hundred and ninety, there shall be included the further sum of ten thousand dollars for the improvement of Burnet park."

· The single question presented on this appeal is whether the provision of the statute, that for the year 1889 there might be included in the city tax levy, in addition to the annual levy, the sum of $5,000, for payment, in whole or in part, of the cost of opening and improving Comstock avenue, was merely permissive or whether it should be construed as mandatory. The contention of the respondent which prevailed at the Special Term was that this statute should be regarded as mandatory; that, although it was permissive in form, still, as it clothed a public body with power to do an act which concerned the interest of the public, the execution of the power became a duty which it could be compelled to perform. As this is the only question in this case, and as it is claimed on one hand that the respondent's contention is fully sustained by all the authorities, and on the other that an opposite doctrine is established by the later and more binding decisions, it is, perhaps, proper to examine the authorities bearing upon this question.

In Potter's Dwarris on Statutes it is said : " Where a statute directs the doing of a thing for the sake of justice, the word *may* means the same as the word *shall*. * * * So, if a statute says that a thing *may* be done which is for the public benefit it shall be construed that it must be done." (Page 220.) In a note on the same page it is said : " *May*, in a statute, means *must* whenever third persons or the public have an interest in having the act done which is authorized by such permissive language. * * * It may be construed to mean *shall* when the public or individuals have a claim *de jure* that the power shall be exercised. (*Newburgh, etc., Turnpike Co.* v. *Miller*, 5 Johns. Ch., 113 ; *Malcom* v. *Rogers*, 5 Cow., 188.) But no general rule can be laid down on this subject further than that such exposition ought to be adopted as shall carry into effect the true intent and object of the enactment. The ordinary meaning of the word, which is permissive, ought to be adopted, and must be presumed to be intended, unless it would manifestly defeat the object of the provision." (*Minor* v. *Mechanics' Bank*, 1 Pet., 64 ; *N. Y. and Erie R. Co.* v. *Coburn*, 6 How Pr., 224 ; *Buffalo Plank-road Co.* v. *Commissioners*, 10 id., 239.)

In *Mayor* v. *Furze* (3 Hill, 612), Chief Justice NELSON said: " The inference deducible from the various cases on this subject seems to be, that where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory."

In *People ex rel. Otsego County Bank* v. *Supervisors of Otsego County* (51 N. Y., 401) it was held that where a statute provides for the doing of an act for the sake of justice, or where it clothes a public body or officer with power to do an act which concerns the public interest or the rights of individuals, though the language of the statute be permissive merely, it will be construed as imperative and the execution of the power may be insisted upon as a duty. In that case, EARL, C., said : " The words ' authorized and empowered ' are usually words of permission merely, and generally have that sense when used in contracts and private affairs ; but when used in statutes they are frequently mandatory and imperative." In the same case it was said : " To determine this question, not only the language of the act, but the circumstances surrounding its passage and the object had in view must be considered."

In *People ex rel. Conway* v. *Supervisors* (68 N. Y., 114), where the supervisors of Livingston county were authorized to adjust and audit certain claims, it was held that the act was mandatory. In that case EARL, J., said: " Here was something directed to be done for the sake of justice, and in such a case the word ' may ' is generally construed to mean ' shall.' Where it is merely indifferent whether a thing shall be done or not, then the word ' may ' in an act is usually construed to confer a permissive authority, but where the public interest or private right requires that the thing should be done, then the word ' may ' is generally construed to mean the same as ' shall.' In such a case it must be presumed that it was the legislative intent to confer the authority for the purpose of promoting the public interest or securing the private right."

In *Hagadorn* v. *Raux* (72 N. Y., 583) it was held that, although the language of the statute under consideration in that case was permissive in form, yet, it being for the protection of public interest, the word " may " therein was equivalent to " must, ' and the statute

262    PEOPLE ex rel. COMSTOCK v. CITY OF SYRACUSE.

FOURTH DEPARTMENT, FEBRUARY TERM, 1891.

was mandatory, as such was the intent of the legislature. The same
doctrine was held in the case of *People* v. *Supervisors* (1 Sheld.
Supr. Ct. R., 517, 520), SMITH, J., said : " In the construction to be
given to the terms used in an act of the legislature, to confer power
upon public bodies like defendant, the intention of the legislature
must govern, to the end that the object of the law may be attained.
For this purpose, in many cases, words which, in their ordinary use,
are only permissive, must be considered as obligatory. Numerous
decisions of the court hold that in certain cases the word ' may '
means the same as the word ' shall, or ' must.' And where public
bodies or officers are authorized and empowered, or it is declared
that it shall be lawful for them to do certain things, the act may be
construed as imperative, so as to make it the duty of such bodies or
officers to exercise the power conferred."    .

In *Phelps* v. *Hawley* (52 N. Y., 23),where an act provided that
in case a bridge should be destroyed and not rebuilt, the bridge
should thereupon become a public bridge, and may be maintained
at the expense of the county, it was held that the word "may," in
the statute, was mandatory, and imposed the obligation to repair
upon the county.

In *People ex rel. City of Lockport* v. *Supervisors of Niagara
County* (49 Hun, 32), where the supervisors were authorized, by a
majority vote, to raise money by general tax, to be paid to the city
of Lockport for construction of water-works, it was held that the
statute being passed to enable the defendant to perform a public
duty in the discharge of a just claim, was, upon well-settled prin-
ciples, entitled to such consideration as would give mandatory
import to the words used, and that it imposed upon the defendant
the duty of exercising the power thus given ; and that such a con-
struction of the statute was not affected by the fact that the act
authorized the action of the board of supervisors to be taken by a
majority vote of the board.

In *Cain* v. *City of Syracuse* (95 N. Y., 83, 91), where, by the
defendant's charter, its common council had power to pass ordi-
nances for demolishing buildings, which by reason of fire " may
become dangerous," it was held that the power conferred was
simply one of local legislation, and the failure to exercise it did not
make the city liable for injuries caused by the falling of a dangerous

PEOPLE ex rel. COMSTOCK v. CITY OF SYRACUSE. 263

Fourth Department, February Term, 1891.

wall. In discussing the questions involved in that case Finch, J., said: "We must consider the nature and scope of the duty, and in so doing must not be misled by the test which makes permissive words absolute and a command. That test is applicable only to solve a doubt, and determine between a ministerial and judicial duty, when such duty may possibly belong to either class, but will not serve to make a duty which is inherently and inevitably discretionary, nevertheless ministerial, because the public have an interest in its exercise or the rights of individuals may be affected by it."

In *Gilmore* v. *City of Utica* (121 N. Y., 568) Earl, J., said: "Generally permissive words used in statutes conferring power and authority upon public officers or bodies will be held to be mandatory where the act authorized to be done concerns the public interest or the rights of individuals. (*Minor* v. *Mechanics' Bank*, 1 Peters, 46; *Thompson* v. *Carroll*, 22 How. [U. S.], 422; *Newburgh and C. T. Co.* v. *Miller*, 5 Johns. Ch., 101; *Malcom* v. *Rogers*, 5 Cow., 188; *Mayor* v. *Furze*, 3 Hill, 612; *People ex rel. Otsego County Bank* v. *Supervisors*, 51 N. Y., 401; *People ex rel. Conway* v. *Board of Supervisors*, 68 id., 114.) The language is held to be mandatory in such cases, not arbitrarily, but because such is supposed to have been the legislative intention. There must be a definite, plain public interest, or a vested, well-defined private right, and then it will very justly be supposed that the legislature meant to subserve or protect the public interest, or to give or secure the private right." The cases of *Thompson* v. *Carroll*, *Minor* v. *Mechanics' Bank*, *Newburgh Turnpike Company* v. *Miller*, *Malcom* v. *Rogers*, were especially referred to as upholding the doctrine stated.

In *Rex* v. *Barlow* (2 Salk., 609) it was held that where a statute directs a thing of a public nature, "may" is understood as "shall."

In *MacDougall* v. *Paterson* (11 C. B., 755) it was held that where a statute confers authority to do a judicial act in a certain case, it is imperative on those so authorized to exercise the authority when the case arises.

In *Queen* v. *Barclay* (L. R., 8 Q. B. D., 306, 312), in discussing the question whether the word "may" should be construed as compulsory, it was said: "The word 'may' is capable of different constructions and has in certain cases been construed as meaning 'must,'

and the true rule, as laid down in *Regina* v. *Bishop of Oxford* (4 L. R., Q. B. D., 245, 525) is, that the context and the surrounding circumstances must be looked at in order to see what in the particular case the construction should be."

In *In re Newport Bridge* (2 El. & El., 377), where a statute enacted "that where any bridge or bridges, or roads at the end thereof, repaired at the expense of any county, shall be narrow and incommodious, it shall and may be lawful to and for the justices of the county, at any of their General Quarter Sessions, to order and direct such bridge or bridges and roads to be widened, improved and made commodious for the public." It was held that the section was permissive, not imperative, and left in the justices a discretion whether or not to order a bridge to be widened, though it was proved to them to be narrow and incommodious. In that case it was said "that the words 'it shall and may be lawful' are to be taken, in their primary sense, as permissive, and not compulsory, unless there be anything in the subject-matter of the enactment requiring that they should receive a different construction."

In *Bell* v. *Crane* (L. R., 8 Q. B., 481) the statute provided that every authority having power to impose rates "may exempt" a building used as a Sunday or ragged school from any rate. It was held that the rating authority had a discretion whether they would or not exempt such building. In delivering the opinion in that case BLACKBURN, J., said: "There is no doubt that 'may,' in some instances, especially where the enactment relates to the exercise of judicial functions, has been construed to give a power to do the act, leaving no discretion as to the exercise of the power when the facts are such as to call for it. But, in the present Act, instead of saying that Sunday and ragged schools shall be exempt, the legislature say the rating authority may exempt them.  *  *  *  This shows that it was not intended that the exemption under the present Act should be absolute. It is clear, therefore, that the use of the phrase 'may exempt' was intended to give a discretion." In *Queen* v. *Bishop of Oxford* (L. R., 4 Q. B. D., 245, 247), COCKBURN, C. J., quoting the language of Mr. Justice CROMPTON, said: "*Prima facie*, the words 'it shall be lawful' import a discretion. It is only where the subject-matter imperatively requires it that they can receive a different construction."

Our purpose in quoting thus fully from the authorities cited has not been simply to show that words permissive in terms have been sometimes construed as mandatory, but to show in what cases such construction has been held proper, and also to discover, if possible, the grounds upon which such construction has been based.   A careful examination of the authorities bearing upon the subject discloses quite clearly, we think, that the decisions holding that permissive words should sometimes be construed as mandatory have been based upon the supposed intent of the legislature. While many general expressions have been used which, when taken alone, might seem to indicate that the word *may,* or words of similar import, should be construed as mandatory when the public interest or the rights of individuals are involved, independent of any question of legislative intent, still, when the cases are examined it will be seen that such construction has prevailed only in cases where the statute under consideration, when taken as a whole and viewed in the light of surrounding circumstances, indicated a purpose on the part of the legislature to enact a law mandatory in its character.   In other words, the courts have sought the intent of the law-makers, and when found, they have carried out such intent by construing permissive words as mandatory.   These cases are in harmony with the general and fundamental rule, that statutes should be so construed as to give effect to the purpose of the law-makers. Therefore, in the decision of this case we are required to determine whether the legislature intended to peremptorily require the common council to include the sum of $5,000 in the tax levy for the year 1889 for the payment, in whole or in part, of the cost of opening and improving Comstock avenue, or whether the intention was merely to permit it to so do if it should deem it proper and for the best interests of the city.

The language of the statute was, "there *may* be included." These words are clearly permissive, and not mandatory.   As it is only where it is necessary to give effect to the clear policy and intention of the legislature that the liberty of construing words that are permissive as mandatory can be taken with the clear words of a statute, it follows that unless the statute under consideration, when construed in the light of the surrounding circumstances, shows that

266    PEOPLE ex rel. COMSTOCK v. CITY OF SYRACUSE.

Fourth Department, February Term, 1891.

it was the purpose of the legislature to peremptorily require the council to include that sum in the tax levy, the words must be construed as permissive only. (*Thompson* v. *Carroll*, 22 How. [U. S.], 434.)

It is said by the learned counsel for the respondent that, "in seeking the proper construction of this provision, the facts in relation to Comstock avenue and the resolution of the common council requesting that an item for its improvement be inserted in the pending bill are to be considered." An examination of the moving papers shows that the common council had taken steps to extend Comstock avenue from University place to the Jamesville road; that subsequently it had passed a resolution to the effect that a proposed appropriation by the legislature of $40,000 for the improvement of Burnet park should be reduced to $35,000, and the remainder appropriated and expended for grading, opening and extending Comstock avenue as laid out and surveyed, and that the senator of that district be requested to procure the act to be so amended, "provided, however, that George F. Comstock shall donate to the city for highway purposes so much of lands belonging to him as shall be required for said extension of said highway." Thus it seems that the condition upon which it was intended that $5,000 should be appropriated for the opening and grading of this avenue was, that the respondent should donate to the city so much of his lands as should be required for the extension of the street. It is, perhaps, proper to assume that the act in question, so far as it relates to this subject, was passed in pursuance of the resolution of the common council. If, as claimed by the respondent, we should consider these facts in determining the intent of the statute, they tend to show that the purpose of the act was to appropriate $5,000 to the opening of Comstock avenue only in the event that the necessary lands belonging to the respondent were donated for that purpose, and hence that the legislature could not have intended to peremptorily require the common council to thus expend that sum. The papers in this case also show that, while the respondent presented to the common council a deed conveying the required lands for street purposes, it contained a forfeiture clause, which was as follows: "And in case the said premises shall not be opened as such street or highway with a proper grade within a reasonable time from and after

the date hereof, then these premises shall *ipso facto* cease and determine and be void without entry or forfeiture." This deed the common council did not deem it advisable to accept and resolved to return it. We find nothing in these facts which tends to show that the words used in the statute under consideration were intended as mandatory. They are more consistent with the claim that the legislature intended only to confer upon the common council the permissive right to include that sum in the tax levy for the purpose named, if they should receive a proper deed from the respondent and they should deem it proper and for the best interests of the public to do so.

Again, it may be observed that the word *may* is used in one portion of the section and the word *shall* in another. This would seem to indicate that as to one class of appropriations it was the intent of the legislature to leave it to the discretion of the common council whether they would include them in the lax levy or not, and that as to another it was the intent to require it to be done. That such was the intent is made more apparent by the order in which such contemplated appropriations were arranged in the statute. They were mentioned separately. First the appropriations which the common council might include in the annual levy were enumerated, and an examination of those mentioned in that portion of the section shows that most, if not all, were of such a character as to render it improbable that the legislature intended to compel the council to include them in the tax levy. After making these provisions the statute then declares that there shall be included in such levy the sum of $10,000 for the improvement of Burnet park. The former were permissive, the latter was imperative. As was said by Grove, J., in *Davies* v. *Evans* (L. R., 9 Q. B. D., 243) : "The framer of the Act evidently knew what words to use when he intended to be imperative," and presumably the words used were those intended.

By the charter of the city the power to lay out, make, open, regulate, repair, improve, alter and discontinue highways, is vested in the common council. (Laws 1885, chap. 26, §§ 22, 30.) By the amendment in question the council were given permission to include a certain sum in the tax levy for the opening and improvement of one of the highways of the city. That it was the purpose of this

act in any way to interfere with the duties and discretion of the council in relation to the opening or improvement of this street, by compelling it to include in the tax levy the sum named for the opening and improvement of it, does not seem probable. Suppose the common council had received the money necessary for this purpose from some other source, could it be insisted that it was still bound to insert that amount in the levy? Again, suppose that for some good reason the common council were convinced and had determined that the best interests of the city required that this highway should not be opened and improved, can it be said that the intent of this amendment was to compel it to do so, and in effect repeal the statute which vested in it the power to control the highways of the city?

When we examine this statute as a whole, in the light of the surrounding circumstances, and in view of the apparent object of its passage, we are unable to discover any such intent or purpose on the part of the legislature as would justify us in holding that the words used therein, which are permissive only, should be construed as mandatory. We are of the opinion that the legislature intended only to give the council permission to include this sum in the tax levy, if, in its discretion, it deemed it proper, and that the facts in this case would not justify our holding otherwise. It follows therefore, that the order appealed from should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Order reversed, with ten dollars costs and disbursements.