THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY J. DOSCHER, Appellant, *v.* HERBERT S. SISSON, as State Commissioner of Excise, et al., Respondents.

Constitutional law — validity of statute (L. 1917, ch. 521) authorizing state excise commissioner to prohibit sale of liquor near camps or barracks of soldiers and factories manufacturing munitions or materials used therein — liquor dealer refused certificate, because his place is within prohibited territory, not entitled to writ of certiorari to review action of commissioner.

1. It is established law that a legislature may delegate to an executive officer the power to determine facts and conditions upon which the operation of a statute depends, without violating the constitutional prohibition against the delegation of legislative functions.

2. The statute (L. 1917, ch. 521) providing that the state excise commissioner, under certain conditions, with the approval of the governor, may, on application of the proper officer, suspend, during the present war, the privileges under liquor tax certificates heretofore or hereafter issued and in such part or parts of a city or town as he may deem proper in proximity to camps or barracks of the state or

federal troops or factories or plants for the manufacture of munitions or materials used therein, is constitutional and valid.

3. Such an order made pursuant to and within valid statutory authority is to be considered as the act of the state and, in connection with the statutes (Liquor Tax Law, Cons. Laws, ch. 34, amd. L. 1917, ch. 521) read together, has the vigor and effect of a statute.

4. Where the state commissioner has issued an order under the provisions of this statute suspending privileges under liquor tax certificates within a described territory of a municipality, a liquor dealer within that locality is not entitled to a writ of certiorari to review the refusal of a deputy commissioner to issue a certificate to him upon the ground that the state commissioner was bound, under the provisions of the Liquor Tax Law (Cons. Laws, ch. 34) to issue the certificate subject to its suspension under the order made in pursuance of chapter 521 of the Laws of 1917.

*People ex rel. Doscher v. Sisson,* 180 App. Div. 464, affirmed.

(Argued January 9, 1918; decided February 5, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 5, 1917, which dismissed a writ of certiorari and reversed an order of the Kings County Court directing issuance to the relator of a liquor tax certificate for the year commencing October 11, 1917.

The facts, so far as material, are stated in the opinion.

*Meyer Kraushaar* and *Emanuel Celler* for appellant. The so-called Newton law contravenes article 3, section 1 of the Constitution of the state of New York, providing that the legislative power of this state shall be vested in the senate and assembly. (*Matter of Lyman,* 160 N. Y. 96; *People* v. *Klinck Packing Co.,* 214 N. Y. 121; Cooley's Const. Lim. [6th ed.] 137; *Vil. of Saratoga Spgs.* v. *Saratoga G., etc., Co.,* 191 N. Y. 123; *Merchants' Exchange* v. *Knott,* 212 Mo. 616; *State* v. *Atlantic Coast Line Railroad Co.,* 56 Fla. 617; *State* v. *Great Northern Railroad,* 100 Minn. 445; *Hewit* v. *State Board,* 148 Cal. 590; *State* v. *Butler,* 105 Me. 91; *Field* v. *Clark,* 143 U. S. 649; *United States* v. *Grimaud,* 220 U. S. 506.) The

Newton law contravenes the express provisions of the State and Federal Constitutions in that it deprives a citizen of his property without due process of law and without notice, and takes from him his property without just compensation and impairs the obligation of contract. (*People ex rel. Loughran* v. *Flynn,* 110 App. Div. 279; 184 N. Y. 579; *Matter of Lyman,* 160 N. Y. 96; *Matter of Livingston,* 24 App. Div. 51; *Matter of Lyman,* 59 App. Div. 217; *Matter of Hilliard,* 25 App. Div. 222; 155 N. Y. 702; *Met. Bd. of Excise* v. *Barrie,* 34 N. Y. 657; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *People* v. *Adirondack Ry. Co.,* 160 N. Y. 225; *Stewart* v. *Palmer,* 74 N. Y. 191.)   The Newton law violates the Fourteenth Amendment to the Constitution of the United States by empowering the excise commissioner with the absolute and unrestrained discretion to withhold permission of a citizen to carry on a lawful business. (*Yick Wo* v. *Hopkins,* 118 U. S. 356; *People* v. *Marx,* 99 N. Y. 377; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *State ex rel. Galle* v. *City of New Orleans,* 113 La. 371; *Fischer Co.* v. *Woods,* 187 N. Y. 90.)   Assuming that the so-called Newton act be constitutional, nevertheless the deputy excise commissioner is bound under the express provisions of the Liquor Tax Law to issue a liquor tax certificate notwithstanding the order of the state commissioner of excise suspending the operation of liquor tax certificates heretofore or hereafter issued. (*People* v. *Shultz,* 87 Misc. Rep. 348; *People ex rel. Hope* v. *Masterman,* 209 N. Y. 182.)

*William R. Dorman* and *Harry D. Sanders* for respondents.   The state never surrenders or abandons its right to exercise its police power when the occasion requires. (*Public Service Com.* v. *Booth,* 170 App. Div. 590; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Barbier* v. *Connolly,* 113 U. S. 27; *B. E. S. R. R. Co.* v. *B. S. R. R.*

*Co.,* 111 N. Y. 132; *Calder v. Kirby,* 5 Gray, 597; *State v. Holmes,* 38 N. H. 225; *Croix v. County Comm.,* 49 Conn. 591; *Columbus City v. Cutcomp,* 61 Iowa, 672; *Gherna v. State,* 16 Ariz. 344; *Stone v. State,* 101 U. S. 814.) The Newton law is constitutional. The license to traffic in liquors is not a property right within the meaning of the Constitution. (*Met. Bd. of Excise v. Barrie,* 34 N. Y. 657; *Matter of Lyman,* 160 N. Y. 96; *Matter of Livingston,* 24 App. Div. 51; *Matter of Lyman,* 59 App. Div. 217.) There was no delegation of legislative power. (*Hauser v. N. B. & M. Co.,* 206 N. Y. 455; *Field v. Clark,* 143 U. S. 649; *Blue v. Beach,* 155 Ind. 121; *People v. Klinck Packing Co.,* 214 N. Y. 121; *Vil. of Saratoga Springs v. S. G. & El. Co.,* 191 N. Y. 123; *M. F. Corp. v. Ohio Industrial Corp.,* 236 U. S. 230.) The relator had no vested right to have certificates for 1917–1918 issued to him for the specific premises or for any premises. (*Matter of Herring,* 196 N. Y. 218; *Whitney v. Grand Rapids,* 71 Mich. 234; *Webster v. State,* 110 Tenn. 491; *State v. Barringer,* 110 N. C. 525; *Commonwealth v. Certain Intoxicating Liquors,* 115 Mass. 153; *State v. Keeran,* 5 R. I. 497; *Mugler v. Kansas,* 123 U. S. 623; *People ex rel. Bernard v. Mc Kee,* 59 Misc. Rep. 369; 126 App. Div. 952.)

COLLIN, J. The relator, Henry J. Doscher, instituted this proceeding, in certiorari, under the authority of section 27, subdivision 1, of the Liquor Tax Law (Cons. Laws, ch. 34) to review the refusal of David H. Ralston, as special deputy commissioner of excise for the county of Kings, to issue a liquor tax certificate to him for the excise year commencing October 1, 1917. The writ was issued by and was returnable before the county judge, who, upon the papers, which included a return to the writ, after a hearing, by an order directed the issuance of the certificate. The Appellate Division reversed the order and dismissed the writ.

1918.]              Opinion, per COLLIN, J.            [222 N. Y.]

The cardinal facts are: On September 13, 1917, the relator then holding a liquor tax certificate for the premises number 5401 Third avenue of the borough of Brooklyn, to expire September 30, 1917, made due and regular application to Special Deputy Commissioner Ralston for a certificate for that place for the year beginning October 1, 1917. The officer refused to issue the certificate for the reason, as stated by him, that the state commissioner of excise by his order made pursuant to and authorized by the provisions of the statute, chapter 521 of the Laws of 1917, prohibited him from issuing the certificate. The relator asserts and argues that (a) the statute is unconstitutional, and, (b) if constitutional, did not relieve the officer from the statutory duty to issue the certificate. We will consider first his second proposition.

Chapter 521 of the Laws of 1917, enacted May 16, 1917, is:

" Section 1. The excise commissioner, with the approval of the governor, whenever in his opinion the public peace, safety and good order may require, and on the application of the mayor of a city or the town board of a town, may, during the present war, suspend the privileges under liquor tax certificates heretofore or hereafter issued and prohibit the sale of alcoholic beverages for such period or periods and during such days or parts of days in such part of such city or town as he may deem proper in proximity to camps or barracks of state or federal troops or of munition factories or plants or of places of manufacture or production of material used in the manufacture of munitions, and order the closing of places within such limits in which the sale of such beverages has been heretofore or may be hereafter authorized by law. He may also prescribe that the sale of alcoholic beverages, if any, within such limits, shall be exclusively to be drunk upon the premises.

" § 2. This act shall take effect immediately."

On July 17, 1917, the state commissioner of excise, having acted and acting in complete accordance with the requirements of the statute precedent to the action, issued an order or proclamation by which he did suspend " the privileges under liquor tax certificates heretofore issued and now outstanding, and prohibit the sale of alcoholic beverages during the period of the present war with Germany under any such certificate heretofore issued and now outstanding, or which may be issued for any place " within a described territory of the borough of Brooklyn. The territory included the premises for which the relator sought the certificate, that is, number 5401 Third avenue, borough of Brooklyn.

The application of the relator was for a certificate under subdivision 2 of section 8 of the Liquor Tax Law (Cons. Laws, ch. 34). It was in complete compliance with the provisions of sections 15 and 16. It contained the statement, as section 15 required, that the premises where the trafficking in liquors was to be carried on under the certificate were number 5401 Third avenue, borough of Brooklyn. The section required the application to contain a statement, among others, that the applicant " may lawfully carry on such traffic in liquors upon such premises, under such subdivision [2 of § 8], and is not within any of the prohibitions of this chapter." (§ 15, subd. 5.) Section 16 relates to the bond to be given at the time of making the application. Section 17 contains the provisions: " When the provisions of sections fifteen and sixteen of this chapter have been complied with and the application provided for in section fifteen is found to be correct in form and does not show on the face thereof that the applicant is prohibited from trafficking in liquor under the subdivision of section eight under which he applies, nor at the place where the traffic is to be carried on, and the bond required by section sixteen is found to be correct * * * then

upon the payment of the taxes levied under section eight * * *, the state commissioner of excise shall, at least two days before the commencement of the period for which the tax is paid, or, if the period for which the tax is paid has already commenced, at once prepare and issue to the person making such application and filing such bond and paying such tax, a liquor tax certificate in the form provided for in this chapter, unless it shall appear * * *."

The relator asserts and argues that under section 17 and chapter 521 of the Laws of 1917 the state commissioner was bound to issue the certificate subject to its suspension by the vigor of his order of July 17 at the instant of the issuance. Therein he errs. The commissioner was not bound to issue the certificate in case the application showed on its face that the relator was prohibited from trafficking in liquor at the number 5401 Third avenue. If a valid statute, at the time the application was made, prohibited after October 1, 1917, the sale of alcoholic beverages within the territory segregated by the order of the commissioner which included, as we have stated, the number 5401 Third avenue, he would have been bound to refuse the certificate. Such statute would have been, as the chapter 521 is, *in pari materia* and to be read with the sections of the Liquor Tax Law we have referred to. When two or more statutes, whenever passed, relate to the same thing or the same class of things or to the same general subject-matter, they are *in pari materia* and are to be construed as forming an unitary system and as one statute. All the statutes relating to the subject of the regulation of the liquor traffic are *in pari materia*. The commissioner could not ignore the prohibiting statute, although the application contained no reference to it. The recognition of and obedience to a statute do not involve an exercise of discretion and must be

yielded by a ministerial officer. The supposed statute existing, the commissioner would have been bound to read it in connection with the application and sections 15 and 17 and to know and act upon the knowledge that the application was for a place at which the traffic was prohibited. The order of the state commissioner, made pursuant to and within valid statutory authority, is to be considered as the act of the state and in connection with the statutes has the vigor and effect of a statute. (*People ex rel. Knoblauch* v. *Warden, etc.*, 216 N. Y. 154; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.) The commissioner or the deputy could not ignore it even as they could not ignore the supposed statute.

We are thus brought to the question as to whether or not the chapter 521, assuming its validity, and the order of the commissioner prohibited or suspended the trafficking in liquor at the number 5401 Third avenue, as prescribed by the order. Manifestly, the order effectuated such result in case it was authorized by the statute. It was authorized by the statute if the legislature intended and expressed the intention that it should be. The reason for and the purpose of the chapter 521 are not obscure or doubtful. The intendment and purpose of it was to prohibit, as public peace, safety and order required, during the present war, the sale of alcoholic beverages " in proximity to " the enumerated places or objects. Because liquor tax certificates authorized their sale, the statute provided for the suspension of the privileges under them. The suspension was but a means to the end that the sale be prohibited. But that end is not dependent exclusively upon that means. It may be accomplished as lawfully and effectively by refusing to issue or by suspending the issuance of a certificate for a place within a territory interdicted to the traffic by the order of the commissioner, and the legislature intended that such method of accomplishment,

whenever and wherever the conditions made it appropriate, should be invoked. Whenever the facts existed, upon which the action of the commissioner depended, he was commanded by the statute to declare the prohibition. The authorization created by the word " may " was mandatory and not permissive. It is a general, although not inflexible, rule that permissive words used in statutes conferring power and authority upon public officers or bodies will be held to be mandatory where the act authorized to be done concerns the public interest or the rights of individuals. (*People ex rel. Comstock v. Mayor, etc., of City of Syracuse,* 59 Hun, 258; affd., on opinion below, 128 N. Y. 632; *Hagadorn* v. *Raux,* 72 N. Y. 583.) The authorized act here concerned the public safety and interest and was compelled by the statute. (*People ex rel. Otsego Co. Bank* v. *Supervisors of Otsego Co.,* 51 N. Y. 401; *People ex rel. Conway* v. *Supervisors of Livingston Co.,* 68 N. Y. 114; *Phelps* v. *Hawley,* 52 N. Y. 23.) The chapter 521 with the order of the commissioner prohibited the sale of liquor at number 5401 Third avenue and suspended, for the period named in the order, the issuance to the relator of the liquor tax certificate for that place.

We have concluded that the chapter 521 is constitutional and valid. The power of the legislature to prohibit or regulate trafficking in liquors is not and cannot be doubtful. The legislature has the right within its police power to enact, upon reasonable and relevant grounds, that liquor should not be sold in certain parts of the state at certain times although sold during those times in other parts of the state. Thus much the relator does not controvert. He urges that the statute violates provisions of the Constitution preservative of property and contractual rights. Assuming, without expressing an opinion, that a liquor tax certificate is within the intendment of the State Constitution property which

the police power of the state may not affect (a proposition obviously not beyond doubt), it is manifest that the application of the relator for the certificate was not based upon and did not involve a vested property or contract right. We cannot give heed to his grievance unless the alleged violation impairs or prejudices his right. It is firmly settled that a party will not be heard by a court to question the validity of a law, or any part thereof, unless he causes it to appear that a right of his is infringed. (*Matter of Keeney,* 194 N. Y. 281; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571; *New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152.) The only grievance of the relator which has a debatable basis is that the legislature did not enact the prohibition and did delegate to or vest in the state commissioner the legislative power which it failed to exercise, and thereby violated the provision of the State Constitution: " The legislative power of this state shall be vested in the senate and assembly." (State Const. art. 3, § 1.) The legislature by the Liquor Tax Law gave to the relator the right to apply for and, certain requirements being fulfilled, have the issuance to himself of a liquor tax certificate. This was legislation completed and having no dependency upon the commissioner or other executive agency. The legislature then directed the commissioner by the chapter 521, during the present war, in proximity to the enumerated places, at places and at times fixed by him, whenever in his opinion the public peace, safety and good order required, to suspend or prohibit the sale of alcoholic beverages, or, in other words, to suspend in such regards the operation of the Liquor Tax Law. The places fixed by the commissioner must be in proximity to the enumerated places; the times fixed must be within the period of the present war; the public safety, peace and order must be in jeopardy— sufficient standards by which the action of the commis-

sioner must be governed. The legislature may validly appoint an executive agency to examine into and determine whether or not the facts existing warrant, as provided by the legislature, the operation or a suspension of the operation of a statute. The legislature, in the instant case, enacted on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to an executive agency the duty of bringing about the result it desired. The enumerated places and the proximities to them were not permanent. They might cease or arise. Conditions in the proximities differed and new conditions might arise. The legislative purpose of securing the public safety and interest, through suspension of selling, could be best accomplished by an executive agency. The power to suspend was not legislative and was executive. The statement of Judge RANNEY through clarity, accuracy and frequent citation has become classic: " The true distinction is between the delegation of the power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." (*Cincinnati, etc., R. R. Co.* v. *Commissioners,* 1 Ohio St. 77.) In *Field* v. *Clark* (143 U. S. 649) an act of Congress making it the duty of the president to suspend by a proclamation a tariff act, as to a country, when he deemed certain duties and exactions imposed by that country upon products of the United States, reciprocally unequal and unjust, was held valid. The court said: " As the suspension was absolutely required when the President ascertained the existence of a particular fact, it cannot be said that in ascertaining that fact and in issuing his proclamation, in obedience to the legislative will, he exercised the function of making laws. Legislative power was exercised when Congress declared

that the suspension should take effect upon a named contingency. What the President was required to do was simply in execution of the act of Congress. It was not the making of law. He was the mere agent of the law-making department to ascertain and declare the event upon which its expressed will was to take effect. It was a part of the law itself as it left the hands of Congress that the provisions, full and complete in themselves, permitting the free introduction of sugars, molasses, coffee, tea and hides, from particular countries, should be suspended, in a given contingency, and that in case of such suspensions certain duties should be imposed." The language and decision bear strongly in favor of the validity of the statute chapter 521. It is established law that a legislature may delegate to an executive officer the power to determine facts and conditions upon which the operation of a statute depends, without violating the constitutional prohibition against the delegation of legislative function. (*Matter of Trustees of Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *Mutual Film Corp.* v. *Ohio Ind. Commission*, 236 U. S. 230; *Red " C " Oil Manfg. Co.* v. *Bd. Agriculture, North Carolina*, 222 U. S. 380; *Block* v. *City of Chicago*, 239 Ill. 251; *Louisville, H. & St. L. Ry. Co.* v. *Lyons*, 155 Ky. 396.) The discretion given the state commissioner related to the execution of the law and not to its creation. Legal principles and the decisions we have cited sustain the conclusion that the chapter 521 did not unconstitutionally delegate to the state commissioner legislative power.

The counsel for the relator suggests extreme cases of possible arbitrary action on the part of the commissioner. It is sufficient to say that the action of the commissioner under our review is not complained of as arbitrary or unreasonable, and, further, courts are not prone, through

the restraint of technical rules or the unreasonable extension of legal rules to violate justice or uphold the infraction of the fundamental principles devised for the protection of the essential rights of property. (*Welch* v. *Swasey*, 193 Mass. 364.)

The order should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK, HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur.

Order affirmed.