Jasen, J.
(dissenting). Since the Commissioner ignored governing internal guidelines of the State Division of Human Rights in rendering the determination that complainant’s obesity constituted a “disability” within the meaning of Executive Law § 292 (21), his decision was not based upon substantial evidence.
Chapter 988 of the Laws of 1974, popularly known as “The Flynn Act”, was enacted to afford those who suffer from physical, mental or medical disabilities protection under the Human Rights Law against discrimination, in employment, housing and places of public accommodation, resort or amusement (see, Memorandum of Approval, Governor Malcolm Wilson, Legislative Bill Jacket, L 1974, ch 988, at 82, 1974 McKinney’s Session Laws of NY, at 2123). On July 10, 1974, the general counsel to the State Division of Human Rights promulgated “Flynn Act Guidelines” to clarify the responsibilities of the Division in the implementation of the antidiscrimination measure. (See, Memorandum of Law No. 576, Division of Human Rights.) The question whether obesity constitutes a disability within the meaning of The Flynn Act was specifically addressed by the guidelines. Memorandum of Law No. 576, at pages 5-6, noted that “[a] second category of disability consists of external characteristics which may or may not be symptomatic of disease. An individual’s weight problem, for example, may be the result of a glandular imbalance, which would seem to be a physiological condition preventing the exercise of a normal bodily function within the meaning of the statute. On the other hand, it may be due simply to a poor and uncontrolled diet. * * * In any case involving this type of disability, the regional office should try to ascertain the existence of an underlying condition bringing the disability within the statutory definition set forth in Human Rights Law § 292 (20) [renum § 292 (21), by L 1976, ch 532, § 1]. Only if the condition comes within the statutory definition of ‘disability’ is the individual protected from discrimination based thereon. Of course, questions may arise in particular cases requiring resolution by a medical expert”. Consequently, if complainant’s obesity were caused by an improper diet, rather than a glandular *221 disorder or similar uncontrollable condition, no disability within the meaning of the statute would exist.
The Flynn Act Guidelines, adopted by the Division of Human Rights pursuant to clear legislative authority (Executive Law §§ 294, 295 [5]), are legally controlling upon the instant proceeding. An administrative rule, regulation, or general order enacted by an agency in accord with the powers delegated to it has the full force and effect of law and governs the conduct of all persons subject to it. (See, Matter of Weekes v O’Connell, 304 NY 259; Ford Motor Credit Co. v Milhollin, 444 US 555, 565; 2 Am Jur 2d, Administrative Law; §§ 291, 292.) That the Flynn Act Guidelines have apparently not been filed with the Secretary of State does not vitiate their internal force as a governing Division of Human Rights policy. Among the acts of administrative agencies to which weight as statutory interpretations is attached are regulations, interpretations, interpretive bulletins, rulings and opinions, agency decisions, and even more informal statements of policy. (2 Am Jur 2d, Administrative Law, § 245 [citations omitted].) The subject guidelines represent a contemporaneous construction of a broadly worded statute by the officials charged with the responsibility of setting its machinery in action, and should not be disregarded except for the most cogent reasons. (1 Cooper, State Administrative Law, at 266.)
There was not a shred of medical evidence introduced, at any level of the proceedings below, which focused upon the cause of complainant’s obesity at the time she made application for employment. This is conceded by all parties. Notwithstanding the instruction of Memorandum of Law No. 576, which advises the regional office of the Division of Human Rights to ascertain the existence of an underlying cause of obesity for the purposes of this Act, the Commissioner failed to inquire as to whether complainant had control over her weight problem. As explicitly recognized by the guidelines, mere observance of the external manifestations of obesity cannot resolve the critical, threshold question of whether complainant suffers from a cognizable disability. As the Commissioner neglected to determine the underlying cause of complainant’s obesity, his determination must be vacated for lack of substantial evidence.
The Division of Human Rights disputes the applicability of The Flynn Act guidelines by asserting “[i]t should be readily apparent from the following authority [General Counsel’s Opn, Nov. 21,1979 (re Methadone dependency and alcoholism); Matter of Perez v New York State Human Rights Appeal Bd., 70 AD2d 558 (1st Dept 1979)] that the 1974 Flynn Act Guidelines *222 memorandum * * * has been subsequently modified and are no longer controlling on this point.” (Brief for State Div of Human Rights, at 13, unnumbered n.) This argument is without merit. First, the authorities relied upon by the Division only concern the reclassification of “drug addiction” as a “disability” rather than as a “social problem”. No mention of the classification of obesity was made, nor was there any intent to effect a wholesale repeal of the Flynn Act Guidelines. Second, even if the cited authorities represented a shift in policy by the Division, we are here concerned only with the policy in effect in 1974 when the complainant was refused employment (majority opn, at p 218, n 2). Since the authorities relied upon by the Division were decided subsequent to the 1974 refusal to hire, they have no application to the instant case.
The arguments advanced by the majority against application of the guidelines are unavailing. The guidelines were dated July 10,1974, complainant was refused employment on September 3, 1974, and the Commissioner rendered his determination in favor of complainant on April 9, 1982. There can be little question that the guidelines apply to an allegedly discriminatory act occurring less than two months after their promulgation. While it is true that the guidelines were to be subject to amendment after the Division “has acquired a fund of experience in the course of its administration of the Flynn Act” (Division of Human Rights Memorandum of Law No. 576, at 2), it cannot seriously be suggested on this record that this “fund of experience” was earned during the two months intervening the date of promulgation and the date of the refusal to hire, so as to effect a sub silentio repeal of the guidelines. Despite the majority’s unsupported assertion that the “Commissioner’s experience administering the law had prompted him to abandon” the guidelines, any shift in policy in 1982 reflecting the Commissioner’s experience should not be accorded retroactive effect to events in 1974. (Majority opn, at p 218, n 2.) The majority’s attempt to apply a purported 1982 policy to a 1974 occurrence is as inappropriate as applying a 1985 statutory scheme to the 1974 occurrence.
It has long been settled that a unit of the executive branch must recognize and obey its own regulations promulgated pursuant to and within valid statutory authority. (See, People ex rel. Doscher v Sisson, 222 NY 387, 394.) A policy decision to limit application of the Human Rights Law was made by the Division of Human Rights. Where obesity is at issue, the status of that condition as a disability can only be determined by inquiry as to *223 the underlying cause of the obesity (Division of Human Rights Memorandum of Law No. 576). It is this policy which was abrogated by the Commissioner. To expand the scope of Executive Law § 292 (21) to render obesity a “disability per se”, as has been done by the Commissioner and a majority of this court, is a manifest usurpation of an unequivocally stated executive branch policy. It is institutionally improper for this court to acquiesce in the Division’s disregard of self-imposed rules. (See, Smolla, The Erosion of the Principle That Government Must Follow Self-Imposed Rules, 52 Fordham L Rev 472.) In this State, it should be assumed that one subject to an official charge of employment discrimination, with a view toward substantial penalties, is legally entitled to insist upon the observance of policies duly promulgated by the Commissioner and operative at the time of the occurrence in question. (See, United States ex rel. Bilokumsky v Tod, 263 US 149, 155 [Brandeis, J.].) By upholding the determination of the Commissioner, the majority affixes its judicial imprimatur upon an unauthorized extension of the jurisdictional reach of the Human Rights Law. I cannot concur in this result.
Accordingly, I would reverse the order of the Appellate Division and remit to the Division of Human Rights for further proceedings.
Judges Meyer, Simons, Kaye and Alexander concur with Chief Judge Wachtler; Judge Jasen dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.